# STATE OF MICHIGAN

# COURT OF APPEALS

LYLE SCHMIDT FARMS LLC,

        Petitioner-Appellant,

v

TOWNSHIP OF MENDON,

        Respondent-Appellee.

FOR PUBLICATION
June 14, 2016
9:25 a.m.

Nos. 326609; 326611
Michigan Tax Tribunal
LC Nos. 14-005344-TT;
           14-005347-TT

---

EQUITY TRUST CO. and LYLE SCHMIDT FARMS, LLC.

        Petitioners-Appellants,

v

TOWNSHIP OF SHERWOOD,

        Respondent-Appellee.

No. 327909
Michigan Tax Tribunal
LC No. 14-007565-TT

---

EQUITY TRUST CO.,

        Petitioner-Appellant,

v

TOWNSHIP OF SHERWOOD,

        Respondent-Appellee.

No. 327916
Michigan Tax Tribunal
LC No. 14-005340-TT

---

Before: MARKEY, P.J., and OWENS and BOONSTRA, JJ.

BOONSTRA, J.

In docket nos. 326609 and 326611, petitioner Lyle Schmidt Farm, LLC ("Schmidt Farm"), appeals by right the Final Opinion and Judgments in lower court nos. 14-005344-TT and 14-005347-TT entered March 11, 2015, in favor of respondent Township of Mendon. In docket nos. 327909 and 327916, petitioners Equity Trust Co. ("Equity Trust") and Schmidt Farm appeal by right the Final Opinion and Judgments in lower court nos. 14-007565-TT and 14-005340-TT entered June 12, 2015, in favor of respondent Township of Sherwood. This Court granted Equity Trust's motion to consolidate the appeals.[1] We affirm.

I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case concerns the ad valorem tax valuation of five parcels of real property located in Michigan. Parcels 75-010-034-008-00 and 75-010-033-012-00 are located on Prairie Corners Road in Mendon Township, which is in St. Joseph County. They consist of 34.3 and 76.3 acres, respectively, of vacant agricultural land. Parcel 75-010-032-007-00 is located on Wakeman Road in Mendon Township. It consists of 40.65 acres of vacant agricultural land. Parcel 12-010-027-200-001-00, and Parcel 12-010-027-200-010-00 are located on Milligan Road in Sherwood Township. They consist of 37.3 and 33.6 acres, respectively, of vacant agricultural land.

In 2003, the First National Bank of Three Rivers ("National Bank") purchased all of the five above parcels from Rex and Ann Croster through a foreclosure sale. On July 23, 2004, Tony and Amy Wiegel purchased the five parcels from National Bank. There is no dispute that when the Wiegels purchased the five parcels, all of the parcels were qualified agricultural property pursuant to MCL 211.7dd(d). However, during the time the Wiegels owned the parcels, they did not submit an affidavit pursuant to MCL 211.27a(7)(o) and, therefore, the July 23, 2004 transfer of the parcels to the Wiegels was considered a transfer of ownership pursuant to MCL 211.27a(6). Because of this transfer of ownership, the parcels were "uncapped" and respondents thus assessed the taxable values of the parcels for the year 2005 according to the state equalized values of those parcels pursuant to MCL 211.27a(3). As a result, the taxable values of the parcels increased in the tax year 2005 by substantially more than five percent or the rate of inflation. On June 29, 2006, Equity Trust purchased parcel 12-010-027-200-010-00 and 12-010-027-200-010-00 from the Wiegels. Also on June 29, 2006, Schmidt Farm purchased the other three parcels from the Wiegels.

In 2006, Schmidt Farm and Equity Trust executed affidavits and filed them with the appropriate registers of deeds, attesting that the parcels remained qualified agricultural property pursuant to MCL 211.27a(7)(o). The taxable values of the parcels were thus not uncapped in 2006 as a result of the petitioners having purchased the property from the Wiegels. In 2007, the Wiegels executed and filed affidavits indicating that the parcels had remained qualified agricultural property after the Wiegels purchased them in 2004. The Wiegels possessed no ownership interest in the parcels at the time they executed and filed these affidavits.

---

[1] *Equity Trust Co v Twp of Sherwood*, unpublished order of the Court of Appeals, entered August 27, 2015 (Docket Nos. 327909, 327916, 326609, and 326611).

In 2008, Schmidt Farm protested the then-current assessments of its three parcels before the Mendon Township board of review and, according to Equity Trust,[2] Equity Trust protested the assessments of its two parcels before Sherwood Township's board of review, requesting that the taxable values of those parcels be reassessed, i.e., "recapped," according to their 2004 values. The boards of review denied these protests, which denials were not appealed to the Michigan Tax Tribunal (MTT).

In 2014, petitioners again petitioned their respective township's board of review for reassessment of their parcels for the tax year 2014. Petitioners argued that the taxable values of the five parcels should be recapped according to their 2004 taxable values because the Wiegels had submitted affidavits pursuant to MCL 211.27a(7)(o) and (8) with regard to those parcels. Respondents again denied the petitions.

Petitioners appealed to the MTT, again arguing that the taxable values of the five parcels should be assessed according to their 2004 values because the Wiegels had submitted affidavits pursuant to MCL 211.27a(7)(o) and (8). Respondents argued that the Wiegels' purchase of the parcels and failure to file the relevant affidavits concerning qualified agricultural property uncapped the parcels, and that their affidavits filed in 2007 did not require the parcels to be recapped at their 2004 values because the Wiegels lacked an interest in the parcels at the time they filed their affidavits.

The MTT denied all of petitioners' appeals. See *Equity Trust Co v Sherwood Twp*, unpublished opinion of the MTT, (Docket No. 14-005340), issued June 12, 2015 (*Equity Trust I*); *Equity Trust Co v Sherwood Twp*, unpublished opinion of the MTT, (Docket No. 14-007565-R), issued June 12, 2015 (*Equity Trust II*); *Lyle Schmidt Farm, LLC v Mendon Twp*, unpublished opinion of the MTT, (Docket No. 14-005347), issued March 11, 2015 (*Schmidt Farm I*); *Schmidt Farm, LLC v Mendon Twp*, unpublished opinion of the MTT, (Docket No. 14-005344), March 11, 2015 (*Schmidt Farm II*). The MTT held that the Wiegels did not meet the requirements of MCL 211.27a(8) because they were not owners of the parcels at the time they filed the affidavits.

Following the MTT's denials, the MTT also denied Equity Trust's post-judgment motion to add the tax year 2015 to its appeal concerning its two parcels. These appeals followed and were consolidated as described above.

## II. STANDARD OF REVIEW

The Michigan Constitution provides for judicial review of administrative agency decisions. Const 1963, art 6, § 28. However, this Court's review of MTT decisions "is limited." *Mt Pleasant v State Tax Comm*, 477 Mich 50, 53; 729 NW2d 833 (2007). The MTT's "factual findings are final if they are supported by competent, material, and substantial evidence on the whole record. If facts are not disputed and fraud is not alleged, our review is limited to whether the Tax Tribunal made an error of law or adopted a wrong principle." *Mich Props, LLC v*

---

[2] No evidence of Equity Trust's 2008 petition to the Sherwood Township board of review is contained in the lower court record.

-3-

*Meridian Twp*, 491 Mich 518, 527-528; 817 NW2d 548 (2012). "Evidence is competent, material, and substantial if a reasoning mind would accept it as sufficient to support a conclusion." *Galuszka v State Employees Retirement Sys*, 265 Mich App 34, 45; 693 NW2d 403 (2004), quoting *City of Romulus v Mich Dep't of Environmental Quality*, 260 Mich App 54, 63; 678 NW2d 444 (2003). With regard to determining whether the MTT's "factual findings are supported by competent, material, and substantial evidence . . . [m]ore than a scintilla of evidence is required, although a preponderance of the evidence is not necessary." *Canterbury Health Care, Inc v Dep't of Treasury*, 220 Mich App 23, 28; 558 NW2d 444 (1996). However, to the extent that an appeal from a decision of the MTT requires this Court to construe a statutory provision or question of law, this Court's review is de novo. *Moshier v Whitewater Twp*, 277 Mich App 403, 407; 745 NW2d 523 (2007); *Schwass v Riverton Twp*, 290 Mich App 220, 222; 800 NW2d 758 (2010).

## III. ANALYSIS

Petitioners argue that the MTT erred by determining that MCL 211.27a(8)(b) allows only a current, not a former, owner of qualified agricultural property to file an affidavit pursuant to MCL 211.27a(7)(o), and that because the Wiegels were former owners of the five parcels when they filed their 2007 affidavits, the parcels should have been recapped at 2004 values. We disagree.

All real property in Michigan is subject to ad valorem tax under the General Property Tax Act (GPTA), MCL 211.1 *et seq.* One classification under MCL 211.34c of assessable real property is "[a]gricultural real property[, which] includes parcels used partially or wholly for agricultural operations, with or without buildings." MCL 211.34c(2)(a). "On or before the first Monday in March in each year, the assessor shall make and complete an assessment roll," which contains information such as "a full description of all the real property liable to be taxed[,]" the assessor's estimate of "the true cash value and assessed value of every parcel of real property[,]" and the assessor's calculation of "the tentative taxable value of every parcel of real property[.]" MCL 211.24(a)-(c). A property's "true cash value" is "the price that could be obtained for the property at private sale . . . ." MCL 211.27(1). This Court has explained the process by which real property's taxable value is assessed as follows:

> Pursuant to the Michigan Constitution and the GPTA, property may not be assessed at more than 50 percent of its "true cash value," or fair market value. Additionally, [Article 9, § 3 of Michigan's 1963 Constitution[3]] limits annual increases in property valuation for taxation purposes until ownership of the property is transferred. An assessment, or "taxable value," may not be annually

---

[3] "For taxes levied in 1995 and each year thereafter, the legislature shall provide that the taxable value of each parcel of property adjusted for additions and losses, shall not increase each year by more than the increase in the immediately preceding year in the general price level, as defined in section 33 of this article [defining the "General Price Level" as "the Consumer Price Index for the United States as defined and officially reported by the United States Department of Labor"], or 5 percent, whichever is less until ownership of the parcel of property is transferred." Const 1963, art 9, § 3.

increased at more than the rate of inflation or five percent, whichever is less. Because this limitation undervalues property in relation to market factors, a "state equalized valuation" is calculated and maintained to more accurately reflect property value increases. The Michigan Constitution permits the property's taxable value to be reassessed according to the following year's state equalized value upon the sale or transfer of the property. [*Signature Villas, LLC v Ann Arbor*, 269 Mich App 694, 696-697; 714 NW2d 392 (2006) (citations omitted).]

In other words, before ownership of property is transferred, its taxable value may increase no more than the lesser of the rate of inflation or five percent. *Id*.; Const 1963, art 9, § 3. But, "[u]pon a transfer of ownership of property after 1994, the property's taxable value for the calendar year following the year of the transfer is the property's state equalized valuation for the calendar year following the transfer." MCL 211.27a(3). This assessment of a property's value according to the state equalized valuation after a transfer of ownership is commonly referred to as the property's taxable value becoming "uncapped." See, e.g., *Klooster v City of Charlevoix*, 488 Mich 289, 297; 795 NW2d 578 (2011), quoting MCL 211.27a(3) ("After certain 'transfer[s] of ownership' occur, however, property becomes uncapped and thus subject to reassessment based on actual property value.").

A "transfer of ownership" under the GPTA is "the conveyance of title to or a present interest in property, including the beneficial use of the property, the value of which is substantially equal to the value of the fee interest." MCL 211.27a(6). However, a transfer of ownership does not include

[a] transfer of qualified agricultural property, if the person to whom the qualified agricultural property is transferred files an affidavit with the assessor of the local tax collecting unit in which the qualified agricultural property is located and with the register of deeds for the county in which the qualified agricultural property is located attesting that the qualified agricultural property will remain qualified agricultural property. [MCL 211.27a(7)(o).[4]]

" 'Qualified agricultural property' means unoccupied property and related buildings classified as agricultural . . . ." MCL 211.7dd(d).

In other words, where title to qualified agricultural property is conveyed, there is no "transfer of ownership" of the property under the GPTA (and thus no uncapping) if "the person to whom the qualified agricultural property is transferred files an affidavit . . . attesting that the qualified agricultural property will remain qualified agricultural property." MCL 211.27a(7)(o). Further, MCL 211.27a(8) provides for "recapping" the taxable value of qualified agricultural property where an affidavit under MCL 211.27a(7)(o) is not filed within the year of the transfer of title of the qualified agricultural property, but is filed later:

---

[4] Before December 22, 2015, the passage from MCL 211.27a(7)(o) was contained in MCL 211.27a(7)(n). 2015 PA 243.

-5-

If all of the following conditions are satisfied, the local tax collecting unit shall revise the taxable value of qualified agricultural property taxable on the tax roll in the possession of that local tax collecting unit to the taxable value that qualified agricultural property would have had if there had been no transfer of ownership of that qualified agricultural property since December 31, 1999 and there had been no adjustment of that qualified agricultural property's taxable value under subsection (3) since December 31, 1999:

(a) The qualified agricultural property was qualified agricultural property for taxes levied in 1999 and each year after 1999.

(b) The owner of the qualified agricultural property files an affidavit with the assessor of the local tax collecting unit under subsection (7)(o).

However, even if qualified agricultural property becomes recapped, the owner of that property is not entitled to a refund of property taxes collected before the recapping occurred. MCL 211.27a(9).

At issue here is whether the Wiegels' affidavits satisfy MCL 211.27a(8). We conclude that the MTT did not err by determining that they did not. The primary goal of statutory construction is to determine the intent of the Legislature by reasonably considering the purpose and goal of the statute. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). To determine the Legislature's intent, this Court looks at the specific language of the statute. *Gauntlett v Auto-Owners Ins Co*, 242 Mich App 172, 177; 617 NW2d 735 (2000). "Courts may not speculate regarding legislative intent beyond the words of the statute. Hence, nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself." *Mich Ed Ass'n v Secretary of State*, 489 Mich 194, 217-218; 801 NW2d 35 (2011) (quotation omitted). "The words used by the Legislature are given their common and ordinary meaning." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012).

MCL 211.27a(8) provides that, as long as *all* of its enumerated conditions are satisfied, the taxable value of a parcel shall be recapped as if there had been no transfer of ownership of the parcel since December 31, 1999, and no consequent uncapping of the parcel's taxable value since that date. See *Gauntlett*, 242 Mich App at 177; see also *Skotak v VicTanny Int'l, Inc*, 203 Mich App 616, 619; 513 NW2d 428 (1994) ("[T]here is no broader classification than the word 'all.' In its ordinary and natural meaning, the word 'all' leaves no room for exceptions."). The parties do not dispute that the parcels are qualified agricultural property; nor is there a dispute that the Wiegels filed affidavits indicating that the parcels were qualified agricultural property. The only dispute is whether they were "owners" of the parcels when they filed their affidavits, i.e., whether the term "owner" as used in the statute encompasses former as well as current owners.

MCL 211.27a(11) defines various terms used in MCL 211.27a, but the term "owner" is not among those statutorily defined terms. This Court may consult a dictionary to define terms that are undefined in the statute. *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). *Black's Law Dictionary* (10th ed) defines an owner as "[s]omeone who has the right

-6-

to possess, use, and convey something; a person in whom one or more interests are vested." See also *People v Beam*, 244 Mich App 103, 109; 624 NW2d 764 (2000), quoting *Black's Law Dictionary* (7th ed) ("An 'owner' is defined as '[o]ne who has the right to possess, use, and convey something."); *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 538 n 2; 676 NW2d 616 (2004) (CAVANAGH, J., concurring in part and dissenting in part) (quoting *Black's Law Dictionary* (7th ed) for the definition of "owner"). Therefore, an owner is "[s]omeone who *has* the right to possess, use, and convey something; a person in whom one or more interests *are* vested." *Black's Law Dictionary* (10th ed) (emphasis added); *Koontz*, 466 Mich at 312. The fact that the verbs in the definition of the word "owner" are in the present tense means that the term "owner" refers to a condition that is "being, existing, or occurring at this time or now[.]" *Deschaine v St Germain*, 256 Mich App 665, 672; 671 NW2d 79 (2003), quoting *Random House Webster's College Dictionary* (2001) (defining the term "present tense"). Thus, contrary to petitioners' argument that MCL 211.17a(8)(b) encompasses owners who used to own property— i.e., former owners of property—the common and ordinary meaning of "[t]he owner of the qualified agricultural property," MCL 211.27a(8)(b), is the person who *currently* holds ownership rights in the property.

Therefore, we conclude that the MTT did not err in concluding that MCL 211.27a(8)(b) allows only a current, not a former, owner of qualified agricultural property to file an affidavit pursuant to MCL 211.27a(7)(o). *Koontz*, 466 Mich at 312; *Black's Law Dictionary* (10th ed). There is no dispute that the Wiegels sold the five parcels to petitioners in 2006, and that after the Wiegels sold the parcels they no longer had "the right to possess, use, and convey" the parcels. *Black's Law Dictionary* (10th ed); *Koontz*, 466 Mich at 312. Indeed, petitioners do not dispute that the Wiegels did not currently own the five parcels when they filed their 2007 affidavits. Therefore, the MTT's finding that the Wiegels did not own the parcels when they filed the affidavits is "supported by competent, material, and substantial evidence on the whole record." *Mich Props, LLC*, 491 Mich at 527. Because the Wiegels were not the owners of the parcels when they filed the affidavits, their affidavits did not satisfy MCL 211.27a(8)(b). *Koontz*, 466 Mich at 312; *Black's Law Dictionary* (10th ed). Thus the MTT did not err by upholding respondents' denials of petitioners' request to recap the parcels at issue. *Mich Props, LLC*, 491 Mich at 527-528.

Further, petitioners' reference to Revenue Admin Bulletin 2006-7 does not dictate a different result. Pursuant to MCL 205.3(f), the Treasury Department "may periodically issue bulletins that index and explain current department interpretations of current state tax laws." MCL 205.3(f). Such a bulletin "is only an interpretation of a statute and does not have the force of law[.]" *Uniloy Milacron USA Inc v Dep't of Treasury*, 296 Mich App 93, 100; 815 NW2d 811 (2012). Although "agency interpretations are entitled to respectful consideration, [] they are not binding on courts and cannot conflict with the plain meaning of the statute." *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 117-118; 754 NW2d 259 (2008). Bulletin 2006-7 refers to a "purchaser," rather than an "owner," filing an affidavit. We do not interpret the bulletin as dispensing with the ownership requirement of the statute and, in any event, such an interpretation would conflict with the plain meaning of the statute. *Complaint of Rovas*, 428 Mich at 117-118.

Similarly, petitioners' reference to the legislative history of MCL 211.27a(8) is unpersuasive. Our Supreme Court has that "in Michigan, a legislative analysis is a feeble

-7-

indicator of legislative intent and is therefore a generally unpersuasive tool of statutory construction." *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 587; 624 NW2d 180 (2001). Further, nothing in the Senate Legislative Analysis, SB 709, cited by petitioners, contradicts the conclusion that MCL 211.27a(8)(b) does not encompass former property owners.

Finally, the MTT's decision in *William White Trust v Twp of Mendon*, unpublished proposed opinion and judgment of the MTT, entered February 22, 2010, adopted by final judgment June 29, 2010 (Docket No. 347179), in addition to being not binding on this Court, see Const 1963, art 6, § 28, does not conflict with the MTT's decisions in this case. *William White Trust* did not concern a former owner of property filing an affidavit under MCL 211.27a(8)(b).

In sum, the MTT properly determined that MCL 211.27a(8)(b) allows only a current, not a former, owner of qualified agricultural property to file an affidavit pursuant to MCL 211.27a(7)(o). The MTT's finding that the Wiegels were former, not current, owners of the five parcels when they filed their 2007 affidavits was supported by competent, material, and substantial evidence. Therefore, the MTT properly upheld respondents' denials of petitioners' request to recap the five parcels at their 2004 taxable values. *Mich Props, LLC*, 491 Mich at 527-528.

Affirmed.


/s/ Mark T. Boonstra
/s/ Jane E. Markey
/s/ Donald S. Owens