*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANIEL PATRU,

Petitioner-Appellant,

v

CITY OF WAYNE,

Respondent-Appellee.

UNPUBLISHED
February 18, 2020

No. 346894
Tax Tribunal
LC No. 16-001828-TT

Before: FORT HOOD, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Petitioner challenges respondent's assessment of residential property in the city of Wayne for the 2016 tax year. Petitioner purchased the property in August 2015 for $32,000 and thereafter made approximately $10,000 worth of repairs to the property. For the 2016 tax year, respondent assessed the property as having a true cash value (TCV) of $50,400, and a taxable value of $25,200. Petitioner appealed these assessments to the Michigan Tax Tribunal, which issued a decision in January 2017 upholding the assessments. In a prior appeal, this Court noted that under MCL 211.27(2), an increase in TCV attributable to normal repairs cannot be considered by an assessor until property is sold, and because the record was insufficient to determine whether the repairs performed by petitioner qualified as normal repairs, this Court reversed and remanded for further proceedings "to determine whether the repairs were normal repairs within the meaning of MCL 211.27(2)." *Patru v City of Wayne*, unpublished per curiam opinion of the Court of Appeals, issued May 8, 2018 (Docket No. 337547) ("*Patru I*"), p 5. On remand, the tribunal agreed that petitioner's repairs qualified as "normal repairs," but determined that respondent's assessment of the property's TCV was proper because of the 2015 change in ownership. The tribunal further found, however, that petitioner's repairs, which were intended primarily to ready the property as rental property, did not affect the assessed TCV value of the property in any event. Accordingly, the tribunal again established the TCV of petitioner's property at $50,400, and the taxable value at $25,200, for the 2016 tax year. Petitioner again appeals as of right, and we now affirm.

In *Briggs Tax Serv, LLC v Detroit Pub Sch,* 485 Mich 69, 75; 780 NW2d 753 (2010), our Supreme Court explained:

-1-

The standard of review of Tax Tribunal cases is multifaceted. If fraud is not claimed, this Court reviews the Tax Tribunal's decision for misapplication of the law or adoption of a wrong principle. We deem the Tax Tribunal's factual findings conclusive if they are supported by "competent, material, and substantial evidence on the whole record." But when statutory interpretation is involved, this Court reviews the Tax Tribunal's decision de novo. [Footnotes omitted.]

A tax exemption statute must generally be narrowly construed in favor of the taxing authority, and this Court generally defers to the Tax Tribunal's interpretation of a statute it is charged with administering and enforcing, but these rules do "not permit a strained construction adverse to the Legislature's intent." *Moshier v Whitewater Twp*, 277 Mich App 403, 409; 745 NW2d 523 (2007).

Petitioner argues that under MCL 211.27(2), the tribunal should have determined the TCV of his property without regard to any "normal repairs" he made to the property after he purchased it in August 2015. At the time relevant to this appeal, MCL 211.27(2) provided:[1]

> (2) *The assessor shall not consider the increase in true cash value that is a result of expenditures for normal repairs, replacement, and maintenance in determining the true cash value of property for assessment purposes until the property is sold.* For the purpose of implementing this subsection, the assessor shall not increase the construction quality classification or reduce the effective age for depreciation purposes, except if the appraisal of the property was erroneous before nonconsideration of the normal repair, replacement, or maintenance, and shall not assign an economic condition factor to the property that differs from the economic condition factor assigned to similar properties as defined by appraisal procedures applied in the jurisdiction. The increase in value attributable to the items included in subdivisions (a) to (o) that is known to the assessor and excluded from true cash value shall be indicated on the assessment roll. This subsection applies only to residential property. The following repairs are considered normal maintenance if they are not part of a structural addition or completion:
>
> (a) Outside painting.
>
> (b) Repairing or replacing siding, roof, porches, steps, sidewalks, or drives.
>
> (c) Repainting, repairing, or replacing existing masonry.
>
> (d) Replacing awnings.
>
> (e) Adding or replacing gutters and downspouts.
>
> (f) Replacing storm windows or doors.

---

[1] MCL 211.27(2) was amended by 2019 PA 116, effective November 15, 2019, to add subsection (p), which addresses the installation, replacement, or repair of an alternative energy system.

(g) Insulating or weatherstripping.

(h) Complete rewiring.

(i) Replacing plumbing and light fixtures.

(j) Replacing a furnace with a new furnace of the same type or replacing an oil or gas burner.

(k) Repairing plaster, inside painting, or other redecorating.

(l) New ceiling, wall, or floor surfacing.

(m) Removing partitions to enlarge rooms.

(n) Replacing an automatic hot water heater.

(o) Replacing dated interior woodwork.  [Emphasis added.]

Initially, we agree with the Tax Tribunal that because there was a transfer of ownership of the subject property in 2015, MCL 211.27(2) did not prohibit the assessor from considering the impact of any "normal repairs" on the property's TCV for purposes of the 2016 tax year.

The taxable status of real property for a given tax year is "determined as of each December 31 of the immediately preceding year." MCL 211.2(2). Generally, property is assessed at 50% of its true cash value[.]" MCL 211.27a(1). However, the "taxable value" of property is subject to "capping," meaning it is limited to the property's taxable value in the immediately preceding year, subject to certain allowable adjustments. MCL 211.27a(2)(a); Const 1963, art 9, § 3.[2] However, upon a transfer of ownership of property, the taxable value is "uncapped," meaning "the property's taxable value for the calendar year following the year of the transfer is the property's state equalized valuation for the calendar year following the transfer." MCL 211.27a(3). The taxable value does not become capped again until the end of the calendar year following the transfer of ownership. MCL 211.27a(4); *Michigan Props, LLC v Meridian Twp*, 491 Mich 518, 530; 817 NW2d 548 (2012). Thus, because petitioner purchased the property in 2015 (i.e., there was a transfer of ownership), the property's taxable value for the 2016 tax year was to be determined by its actual assessed value as of December 31, 2015, without regard to any capping limitations.

While MCL 211.27(2) does not expressly provide that it does not apply to "normal repairs" performed during a year when ownership of property is transferred (i.e., the taxable value becomes uncapped), the statute must be read in conjunction with other provisions of the General Property

---

[2]"[B]efore ownership of property is transferred, its taxable value may increase no more than the lesser of the rate of inflation or five percent." *Lyle Schmidt Farms, LLC v Mendon Twp*, 315 Mich App 824, 831; 891 NW2d 43 (2016). Once ownership of the property is transferred, its taxable value is "uncapped," see *id*., and its taxable value for the year following the transfer is determined by the property's actual value, MCL 211.27a(3).

Tax Act, MCL 211.1 *et seq.*, and Const 1963, art 9, § 3. See *Bloomfield Twp v Kane*, 302 Mich App 170, 176; 839 NW2d 505 (2013) (statutes that relate to the same matter are considered to be *in pari materia* and must be read together as a whole). It is apparent that MCL 211.27(2) was adopted to distinguish "normal repairs" or property maintenance from other improvements (e.g., "additions") that increase the value of property as long as the property is owned by the same party. In *Toll Northville LTD v Twp of Northville*, 480 Mich 6, 12; 743 NW2d 902 (2008), our Supreme Court, quoting *WPW Acquisition Co v City of Troy*, 466 Mich 117, 121-122; 643 NW2d 692 (2001), observed that the purpose of Const 1963, art 9, § 3, as amended in 1994 by Proposal A, is

> to generally limit increases in property taxes on a parcel of property, as long as it remains owned by the same party, by capping the amount that the "taxable value" of the property may increase each year , even if the "true cash value," that is, the actual market value, of the property rises at a greater rate. However, a qualification is made to allow adjustments for "additions."

As indicated, however, when property is sold, it becomes "uncapped" and the property's value for the following tax year is determined by its value as of December 31 of the preceding year. In other words, the property's TCV for the tax year following a transfer of ownership is determined by its value as of December 31 of the calendar year in which the transfer of ownership occurred. Accordingly, the restriction on consideration of "normal repairs" for purposes of calculating increases in TCV is intended to apply only while property is owned by the same party, and thus would not apply to repairs performed during a year in which ownership of the property is transferred. Rather, the taxable value of property for the tax year following a transfer of ownership would be 50% of the property's TCV as of December 31 of the immediately preceding year (i.e., the year there was a transfer of ownership). MCL 211.2(2); MCL 211.27a(1) and (3).

TCV "means the usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price that could be obtained for the property at a private sale, and not at auction sale except as otherwise provided in this section, or at forced sale." MCL 211.27(1). TCV is synonymous with fair market value. *Pontiac Country Club v Waterford Twp*, 299 Mich App 427, 434-435; 830 NW2d 785 (2013).

Because petitioner purchased the subject property in August 2015, the taxable value of the property became uncapped between August 2015 and December 31, 2015, and, for the 2016 tax year, the assessor was required to determine the property's TCV as of December 31, 2015. Petitioner argues that under MCL 211.27(2), respondent can consider the value added by "normal repairs" only when *petitioner* sells the property, because the statute states that "[t]he assessor shall not consider the increase in true cash value that is a result of expenditures for normal repairs, replacement, and maintenance in determining the true cash value of property for assessment purposes until the property is sold." While this interpretation may be correct with respect to repairs made during a tax year in which there is no transfer of ownership, it cannot apply to repairs made during a year in which there was a transfer of ownership because "the property's taxable value for the calendar year following the year of the transfer is the property's state equalized valuation for the calendar year following the transfer," MCL 211.27a(3), which in turn is "determined as of each December 31 of the immediately preceding year," MCL 211.2(2). Thus, the tribunal correctly held that it was required to determine the TCV of the subject property on the basis of its fair market

value as of December 31, 2015, regardless of any "normal repairs" made by petitioner in 2015 after he purchased the property.

Petitioner seems to rely on the law-of-the-case doctrine to argue that under *Patru I*, the tribunal was required to determine whether petitioner's repairs qualified as "normal repairs" and was further prohibited from considering the impact of any "normal repairs" in determining the property's TCV for purposes of the 2016 tax year. In *Lenawee Co v Wagley*, 301 Mich App 134, 149-150; 836 NW2d 193 (2013), this Court explained:

> "The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue." *New Props, Inc v George D Newpower, Jr, Inc*, 282 Mich App 120, 132; 762 NW2d 178 (2009) (quotation marks and citation omitted). "[I]f an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *Id*. (quotation marks and citation omitted; alteration in original). The doctrine is applicable "only to issues actually decided, either implicitly or explicitly, in the prior appeal." *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000). "The primary purpose of the doctrine is to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001).

In *Patru I*, this Court did not resolve whether petitioner's 2015 repairs to the property could or could not be considered in determining the property's TCV for the 2016 tax year, but instead determined that "further proceedings are necessary to determine whether the repairs were normal repairs within the meaning of MCL 211.27(2)." *Id.*, unpub op at 5. More significantly, this Court did not address the effect of the property's transfer of ownership in 2015 on the tribunal's consideration of "normal repairs" under MCL 211.27(2) for purposes of the 2016 tax year. Because this issue was not actually addressed and decided in the prior appeal, the law-of-the-case doctrine does not apply.

Petitioner further argues that the tribunal erred by also finding that, regardless of the proper construction of MCL 211.27(2), petitioner's repairs did not have any bearing on the property's TCV, which was determined to be $50,400 as of December 31, 2015. We again disagree. The tribunal did not credit petitioner's argument that the property was in substandard condition when he purchased it. The tribunal reviewed petitioner's Multiple Listing Service (MLS) printouts and photographs for both the subject property and comparable properties. The tribunal found that petitioner's MLS listing for the subject property showed a property in "average" condition, and that petitioner's photographs of the property, before any repairs, showed "a property that is livable and habitable with reasonable marketability and appeal." The tribunal noted that the purpose of petitioner's repairs was "to ready the property as a tenant rental." It is undisputed that the assessed TCV of the property for the 2015 tax year was $48,000. Given this evidence, it was appropriate for the tribunal to draw conclusions about the value of the property before and after petitioner's purchase, specifically, that the prior year's assessment of $48,000 was reflective of the property's TCV before petitioner purchased it, that an increase of $2,400 could be attributed to inflation and

-5-

increases in the market, and that petitioner's "normal repairs" were not attributable to the property's substandard condition, but rather were intended primarily to prepare the property as rental property. The tribunal concluded that the "evidence supports the property's assessment as a property in average condition both at the time Petitioner acquired it and after he completed the normal repairs," and that "the assessment did not consider the increase in true cash value that was the result of normal repairs."

We reject petitioner's argument that the tribunal was required to calculate the property's TCV using a "before repairs" appraisal and an "after repairs" appraisal. Petitioner's reliance on the State Tax Commission's 2014 Bulletin No. 7 in support of this argument is misplaced. Indeed, page 3 of the Bulletin states:

> The exemption for normal repairs, replacements and maintenance ends in the year after the owner who made the repairs, replacements and maintenance sells the property. *In the year following a sale, the assessed value shall be based on the true cash value of the entire property*. The amount of assessment increase attributable to the value of formerly exempt property returning to the assessment roll is new for equalization purposes. [Emphasis added.]

As already explained, because the taxable value of the subject property was uncapped due to the transfer of ownership in 2015, and respondent was permitted to assess the property on the basis of its actual TCV as of December 31, 2015, there was no need to determine the property's values before and after petitioner's "normal repairs" in 2015.

Petitioner also argues that the tribunal erred by failing to make its own independent determination of the property's TCV. See *Jones & Laughlin Steel Corp v City of Warren*, 193 Mich App 348, 354-356; 483 NW2d 416 (1992). The record does not support this argument. The tribunal evaluated the evidence and proposed valuation methods offered by both parties. The tribunal found that "[r]espondent's sales comparison approach is the most reliable and credible valuation evidence which also supports the assessment and 2016 uncapping of the subject property." The tribunal did not just automatically accept respondent's valuation. Rather, it analyzed respondent's sales-comparison data and found that "a reasoned and reconciled determination of market value is obtainable from Respondent's sales," which it concluded "supports the assessment and 2016 uncapping of the subject property."

Petitioner further argues that the tribunal erred by rejecting his 2015 purchase price of the property as determinative of its TCV. MCL 211.27(6) provides:

> Except as otherwise provided in subsection (7), the purchase price paid in a transfer of property is not the presumptive true cash value of the property transferred. In determining the true cash value of transferred property, an assessing officer shall assess that property using the same valuation method used to value all other property of that same classification in the assessing jurisdiction. As used in this subsection and subsection (7), "purchase price" means the total consideration agreed to in an arms-length transaction and not at a forced sale paid by the purchaser of the property, stated in dollars, whether or not paid in dollars.

In this case, the tribunal considered petitioner's evidence of the 2015 purchase price for the property, but it also considered the nature of the sale, which involved a bank sale in which the grantor was the United States Department of Housing and Urban Development. The tribunal found that the seller was not necessarily motivated to receive market value for the property and that the property's purchase price was not presumptive of its TCV. The tribunal instead gave greater weight to the evidence submitted by respondent in support of its sales-comparison approach to valuation, which was based on sales of five properties similar in age and with comparable square footage, style, siding, and condition. The tribunal found that respondent's evidence provided "the most reliable and credible valuation evidence" and supported respondent's assessment of the subject property.

In sum, petitioner has not shown that the Tax Tribunal committed an error of law or that its decision is not supported by competent, material, and substantial evidence on the whole record. Accordingly, we affirm its decision.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Jane M. Beckering
/s/ Mark T. Boonstra