GAUNTLETT v AUTO-OWNERS INSURANCE COMPANY

Docket No. 212074. Submitted April 4, 2000, at Detroit. Decided August 15, 2000, at 9:10 A.M.

Trevor Gauntlett, by his next friend, Meggen M. Maloney, brought an action in the Oakland Circuit Court against Auto-Owners Insurance Company, the no-fault insurer of his mother, Ellen Flinn, seeking personal protection insurance benefits for survivor's loss as provided in § 3108 of the no-fault act, MCL 500.3108; MSA 24.13108, after Flinn died from injuries sustained in an automobile accident. The defendant moved for summary disposition, arguing that the plaintiff suffered no compensable loss because the plaintiff was supported by his mother before her death through trust disbursements to his mother, and after her death the plaintiff became a beneficiary of the trust and was never denied a disbursement for his support. The plaintiff moved for summary disposition, arguing that he suffered loss inasmuch as the trust corpus and the investment income therefrom decreased because trust assets were used to pay for estate and inheritance taxes, funeral expenses, and bequests. The court, Deborah G. Tyner, J., denied the defendant's motion and granted the plaintiff's motion with regard to liability. The court also ruled that damages would be measured at trial as the decrease in the trust's income-producing assets. At the jury trial, the court directed a verdict and award of damages for the plaintiff. The defendant appealed.

The Court of Appeals *held*:

MCL 500.3108; MSA 24.13108 provides in part that "personal protection insurance benefits are payable for a survivor's loss, after the date on which the deceased died, of contributions of tangible things of economic value, not including services, that dependents of the deceased at the time of the deceased's death would have received for support during their dependency from the deceased if the deceased had not suffered the accidental bodily injury causing death." Survivor's loss benefits replace contributions a survivor would have received from the decedent had the decedent not died. A plaintiff in an action seeking survivor's loss benefits from an insurer must submit proof of such loss of contributions. In this case, the plaintiff suffered no loss of contributions from his mother

for his support following her death because he became the benefi-
ciary of his mother's trust after her death and was never denied a
disbursement for his support.

Reversed; trial court to enter judgment in favor of defendant.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE — SURVIVOR'S
LOSS BENEFITS — TRUSTS.

Personal protection insurance benefits for a survivor's loss are for the
replacement of contributions a survivor would have received from
the decedent for the survivor's support had the decedent not suf-
fered the accidental bodily injury causing death; a survivor suffers
no loss that is compensable with survivor's loss benefits where the
survivor was supported by the decedent through trust disburse-
ments during the decedent's life, and the survivor became the bene-
ficiary of the trust after the decedent's death and was never denied
a disbursement for his support, even though the corpus of the trust
decreased as a result of the death (MCL 500.3108; MSA 24.13108).

*Bodman, Longley & Dahling LLP* (by *Gary D.
Reeves*), for the plaintiff.

*Anselmi, Mierzejewski & Ledwidge, P.C.* (by
*Joseph S. Mierzejewski*), for the defendant.

Before: CAVANAGH, P.J., and SAWYER and ZAHRA, JJ.

CAVANAGH, P.J. In this action for no-fault survivor's
loss benefits,[1] defendant Auto-Owners Insurance
Company appeals as of right from the May 19, 1997,
directed verdict in favor of plaintiff Trevor Gauntlett.
Defendant also appeals as of right from the trial
court's August 29, 1996, order denying defendant's
motion for summary disposition and the trial court's
January 23, 1997, order denying defendant's renewed
motion for summary disposition and granting plain-
tiff's motion for summary disposition with respect to
liability. We reverse.

---

[1] See MCL 500.3108; MSA 24.13108.

In 1993, plaintiff was fourteen years old and lived in Augusta, Michigan, with his mother, Ellen Flinn, who was divorced. Flinn was not employed; however, she was the beneficiary of a trust. On March 19, 1993, plaintiff and Flinn were in an automobile accident. Flinn suffered injuries that led to her death that evening. Plaintiff became the sole beneficiary of the trust after his mother's death.[2] With the assistance of his next friend and sister, Meggen Maloney, plaintiff submitted a claim for no-fault insurance survivor's benefits under his mother's policy with defendant. Defendant denied the claim, contending that plaintiff failed to show any compensable loss of support after his mother's death.

Plaintiff filed a claim in the circuit court on November 2, 1995, seeking payment of the requested benefits by defendant. Defendant moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that plaintiff suffered no compensable loss after his mother's death because he continued to receive support from weekly child support payments and trust withdrawals, which were in the trustee's discretion but never denied to plaintiff; thus he received the same support after his mother's death as he received before her death. Plaintiff opposed the motion and moved for summary disposition pursuant to MCR 2.116(I)(2), arguing that the trust corpus was decreased because of estate and inheritance taxes, funeral expenses, and bequests; therefore, plaintiff suffered a yearly loss of investment income. On August 23, 1996, the trial court entered an order deny-

---

[2] We note that plaintiff was not a beneficiary of the trust before Flinn's death.

ing both parties' motions and holding that plaintiff was required to show that he suffered a loss due to his mother's death, which the court would measure as the difference between the amount he received from the trust, through disbursements to his mother, during his mother's life and the amount he received in the trustee's discretion after his mother's death.

Defendant filed a renewed motion for summary disposition on November 15, 1996, arguing that plaintiff failed to show a loss as required by the court's August 23, 1996, order. The trial court denied defendant's motion and held that it would measure plaintiff's loss as the decrease in his mother's income-producing assets. The court then granted plaintiff's motion for summary disposition with regard to liability only.

A jury trial on the issue of damages was held on April 21, 1998. Plaintiff testified that he received various disbursements from the trustee after his mother's death, including disbursements for school, vacations, and a car, and he had never been denied a disbursement when he requested one. He further stated that he received approximately $33,000 a year in child support, half of which he was allowed to use and half of which was deposited into the trust. Pat Lewellen, an employee of the Old Kent Bank Trust Department, testified that her bank managed Ellen Flinn's trust. Lewellen stated that plaintiff was the sole beneficiary of the trust after Flinn's death and he would be entitled to all the trust income at age eighteen, half of the trust corpus at age twenty-five, and the balance of the trust corpus at age thirty. According to Lewellen, the means of plaintiff's support had not changed since the death of his mother; however, he received more support because he attended college. She agreed that the

primary change to the trust caused by Flinn's death and the payment of taxes and administrative expenses was that plaintiff would likely inherit less money at ages twenty-five and thirty.

Following the testimony, the trial court noted that there was no contest between the parties regarding the amounts paid for taxes and administrative expenses. Thus, the court held that the only issue was a legal issue for the court to decide and it granted plaintiff a directed verdict. The court held that the measure of loss was the decrease in the income-producing assets and not the actual trust disbursements. The court determined that plaintiff had established that Ellen Flinn's estate was reduced because of administrative expenses for the funeral, lawyers, accounts, inheritance tax, and federal estate tax, all of which were attributable to Flinn's death. Therefore, the trial court entered a judgment of $157,422.70 in plaintiff's favor.

The question at issue in this case is whether the circuit court erred in measuring plaintiff's no-fault survivor's loss benefits under the no-fault insurance act, MCL 500.3108; MSA 24.13108, as the decrease in the income-producing assets contained in the trust used by the insured to support plaintiff, rather than as the difference between the amounts of support he received from the trust before and after his mother's death. We review a grant or denial of summary disposition or a directed verdict de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998); *Meagher v Wayne State Univ*, 222 Mich App 700, 708; 565 NW2d 401 (1997). Statutory interpretation is a question of law that is also reviewed de novo on appeal. *Oakland Co Bd of Co Rd Comm'rs v Mich-*

*igan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998).

The primary purpose of statutory interpretation is to ascertain and effectuate the intent of the Legislature. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). When determining the intent of the Legislature, this Court must first look to the specific language of the statute. *People v Borchard-Ruhland*, 460 Mich 278, 284; 597 NW2d 1 (1999). If the plain and ordinary meaning of the statute's language is clear, judicial construction is inappropriate. *Id.* However, if reasonable minds can differ regarding the statute's meaning, judicial construction is appropriate. *Adrian School Dist v Michigan Public School Employees' Retirement System*, 458 Mich 326, 332; 582 NW2d 767 (1998). With these principles in mind, we look at the plain language of the statutory provision providing for no-fault survivor's loss benefits, MCL 500.3108; MSA 24.13108.

Personal protection insurance benefits for survivors of individuals who die as a result of the ownership, operation, maintenance, or use of a motor vehicle are covered in MCL 500.3108; MSA 24.13108.[3] The statute provides:

(1) Except as provided in subsection (2), *personal protection insurance benefits are payable for a survivor's loss which consists of a loss, after the date on which the deceased died, of contributions of tangible things of economic value, not including services, that dependents of the*

---

[3] MCL 500.3105(1); MSA 24.13105(1) provides that "[u]nder personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle . . . ." "Bodily injury includes death resulting therefrom . . . ." MCL 500.3105(3); MSA 24.13105(3).

*deceased at the time of the deceased's death would have
received for support during their dependency from the
deceased if the deceased had not suffered the accidental
bodily injury causing death* and expenses, not exceeding
$20.00 per day, reasonably incurred by these dependents
during their dependency and after the date on which the
deceased died in obtaining ordinary and necessary services
in lieu of those that the deceased would have performed for
their benefit if the deceased had not suffered the injury
causing death. Except as provided in section (2) the bene-
fits payable for a survivors' loss in connection with the
death of a person in a single 30-day period shall not exceed
$1,000.00 for accidents occurring before October 1, 1978,
and shall not exceed $1,475.00 for accidents occurring on or
after October 1, 1978, and is not payable beyond the first
three years after the date of the accident.

(2) The maximum payable shall be adjusted annually to
reflect changes in the cost of living under rules prescribed
by the commissioner. A change in the maximum shall apply
only to benefits arising out of accidents occurring subse-
quent to the date of change in the maximum. The maximum
shall apply to the aggregate benefits for all survivors paya-
ble under this section on account of the death of any one ,
person. [MCL 500.3108; MSA 24.13108 (emphasis added).]

The circuit court in this case of first impression
was called on to determine the appropriate measure
of plaintiff's loss of "contributions of tangible things
of economic value" that he would have received for
his support during his dependency from the decedent
if she had not died. The court held that the appropri-
ate measure was the decrease in the income-
producing assets contained in the trust because of
Ellen Flinn's death and the resulting payments of
administrative expenses and taxes with trust assets.
However, defendant contends that the proper mea-
sure of plaintiff's no-fault survivor's loss benefits is
the difference between the amounts of support he

received from the trust before his mother's death through trust disbursements to his mother and after his mother's death, when he became the beneficiary of the trust. We agree with defendant.

In analyzing whether the trial court correctly construed MCL 500.3108; MSA 24.13108, we read the language of the statute "in the light of its legislative history and in the context of the no-fault act as a whole." *Gobler v Auto-Owners Ins Co*, 428 Mich 51, 61; 404 NW2d 199 (1987). " 'The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses.' " *Id.*, quoting *Shavers v Attorney General*, 402 Mich 554, 578-579; 267 NW2d 72 (1978). "The no-fault insurance act is remedial in nature and must be liberally construed in favor of persons intended to benefit thereby." *Gobler, supra* at 61, citing *Bierbusse v Farmers Ins Group*, 84 Mich App 34; 269 NW2d 297 (1978).

In *Miller v State Farm Mut Automobile Ins Co*, 410 Mich 538; 302 NW2d 537 (1981), the Supreme Court discussed the issue of the proper method of calculating the amount of support a plaintiff would have received from the decedent if the decedent had not died. The Court stated that in analyzing the question, "our obligation is to discover and give effect to the Legislature's intention in enacting § 3108 as best we can determine it from the language employed in § 3108 and the no-fault act as a whole, and in light of such legislative history as is available." *Id.* at 556. The Court determined that the "fund of 'tangible things of economic value' " was not limited to wages. *Id.* at 556-557.

In today's complex economic system, the "tangible things of economic value" which many persons contribute to the support of their dependents include hospital and medical insurance benefits, disability coverage, pensions, investment income, annuity income and other benefits. Had it been the intent of the Legislature to limit survivors' benefits to a sum equal to what eligible dependents would have received from wages and salary alone, it could be expected to have said so. It chose instead the far broader category of "contributions of tangible things of economic value" which, on its face, suggests the inclusion of benefits derived for family support from other and different sources. [*Id.* at 557.]

Analyzing the legislative history of the statute, the Supreme Court found that the phrase "contributions of tangible things of economic value" in MCL 500.3108; MSA 24.13108 evidenced an intent that benefits under this statute "should at least roughly correspond to *economic loss* damages recoverable under our wrongful death act. MCL 600.2922; MSA 27A.2922." *Id.* at 560 (emphasis in original). The Court continued:

Accordingly, it is our conclusion that the Legislature intended that the measurement of § 3108 survivors' loss benefits should include the value of tangible things other than, and in addition to, wages and salary. The dollar value of such items as employer-provided health insurance coverage, pensions, disability benefits, and other tangible things of economic value that are lost to the surviving dependents by reason of the insured's death must be taken into account. It is apparent then, that in many cases, the total amount of "contributions of tangible things of economic value" will exceed wage or salary income. [*Id.* at 561.]

The Supreme Court in *Miller* plainly stated that survivor's loss benefits include more than wages and employment benefits the decedent would have

received and may include investment income. Thus, the trial court did not err in holding that plaintiff was not precluded from obtaining survivor's benefits merely because his mother's contribution to his support came from the interest income on her trust. However, this does not resolve the issue of the correct measure of plaintiff's loss of support caused by his mother's death.

In *Miller*, the defendant insurance company argued that the "contribution of tangible things of economic value" should be reduced by income-related taxes that the decedent would have paid and by an amount determined to be the decedent's "personal consumption factor." Regarding the question whether benefits should be reduced by income-related taxes the decedent would have had to pay, the Court stated:

> Tax liability associated with income is an inescapable fact of our modern economic life. In measuring the financial loss actually incurred by surviving dependents, it would be unrealistic to fail to acknowledge that surviving dependents would *not* have received for their support that portion of the deceased's income that he would have been required to pay in taxes. Moreover, the adjustment for such taxes can be accurately based on readily ascertainable information, without unnecessary administrative delays or time-consuming factual disputes. [*Id.* at 564 (emphasis in original).]

However, the Court held that calculation in every case of a "consumption factor" was "inconsistent with the declared legislative purposes of expeditious settlement of survivors' claims without complex factual controversy." *Id.* at 568.

> A family is not run like a commercial enterprise. Family finances are not allocated or their expenditure accounted

for as in a business. Accounting procedures are rarely, if ever, followed to account for the precise dollars-and-cents expenses in cash and in kind attributable to each member of the family. [*Id.* at 569.]

The Court concluded that the Legislature "did not intend that the calculation of § 3108 benefits should include adjustment for the decedent's 'personal consumption factor.' " *Id.* at 569-570. Thus, the Court held that the calculation of survivor's loss benefits should be calculated:

(1) to include all demonstrable "contributions of tangible things of economic value" including, but not limited to, wages that would have been received as support by the surviving dependents from the deceased but for his death;

(2) reduced by an adjustment for the income-related taxes that would have been paid by the decedent on items contributed by him to his dependents' support;

(3) without adjustment for the decedent's "personal consumption factor." [*Id.* at 570.]

Where the decedent did not receive wages or a salary or have a regular income, it has been more difficult for the courts to determine what constitutes demonstrable contributions of tangible things of economic value that would have been received from the decedent. *Grier v DAIIE*, 160 Mich App 687, 689-690; 408 NW2d 429 (1987), involved a temporarily unemployed decedent and a dispute over whether survivor's benefits should be based on what the decedent would have earned in the future if he had lived or should be based on his last month of employment. This Court stated:

Determining what plaintiffs "would have received" from decedent requires the trial court to predict the future. . . .

\*     \*     \*

> [T]he Legislature stated that survivor's loss benefits are payable to replace the contributions the survivors "would have received" but for the decedent's death. Similar language employed by the Legislature regarding work-loss benefits in § 107(b) confers benefits only for *actual* loss of income. . . . To what extent wages would have been received but for the injury is a question of fact upon which proofs must be submitted. [*Id.*]

In *Gobler, supra,* the Supreme Court also considered a case in which the decedent was unemployed at the time of his death. The Court determined that "the Legislature did not intend to automatically deny relief to dependents of a deceased on the sole basis that the deceased was unemployed at the time the accidental bodily injury causing death occurred." *Id.* at 64. The decedent had previously worked for the United States Forestry Service but was an unemployed student when he was killed in an automobile accident on March 16, 1976. Some time in 1975, the decedent had filed an application for full-time employment with the Forestry Service and he qualified for inclusion on the Civil Service Registry on the basis of his education and superior academic standing. An inquiry of availability was forwarded to him on September 14, 1976, some six months after he died. A Forestry Service staffing specialist testified that four of the six people who qualified for the three open positions declined or failed to reply. The decedent therefore would have received a full-time position. *Id.* at 56-58. This Court denied the decedent's widow survivor's loss benefits based on these facts. *Id.* at 59. However, the Supreme Court agreed with the trial court that the decedent would have been

employed by the Forestry Service if he had survived the accident and reinstated survivor's loss benefits. *Id.* at 66.

In *McCollum v Community Service Ins Co*, 137 Mich App 805; 359 NW2d 215 (1984), the decedent was a recently divorced mother who received welfare but was actively seeking employment. The decedent and her children lived in a house on the decedent's mother's farm with the understanding that the decedent would pay rent and utilities when she obtained employment. The decedent's mother also loaned her as much as $300 a month to meet the needs of her family. *Id.* at 807-808. The defendant insurer argued that because the maternal grandparents continued to provide financial support and rent-free housing to the decedent's children after her death in an automobile accident, the children had not sustained an economic loss. However, this Court held that the amounts loaned by family members to the decedent to care for her children while she was unemployed were "contributions of tangible things of economic value" received from the decedent because the decedent "exercised her independent judgment upon how these funds could best be used to support her children." *Id.* at 811. Moreover, the funds were loans that the decedent had agreed to repay. *Id.* at 812. Because her children had lost "this guarantee of repayment security," they had suffered tangible economic loss compensable under the statute. *Id.*

Although the fact pattern in *McCollum* is similar to that of the present case because the decedent's source of income was not employment-related, the opinion is not on point here because the funds represented a debt undertaken by the decedent and there

is no indication that those particular funds were directly available to the children after their mother's death. In the present case, by contrast, the trust continued after plaintiff's mother died and he received regular payments from the trust, including disbursements for non-necessities such as a car and vacations. According to the testimony, the trustee never denied plaintiff a requested disbursement.

In light of the relevant case law and the clear language of the statute, we conclude that the trial court erred in ruling that the proper measure of plaintiff's loss was the diminution of the trust principal. The measure employed by the trial court was contrary to the plain meaning of the statute, which controls and must be applied as written. See *Grier, supra* at 690. The statute clearly requires a plaintiff in a suit for no-fault survivor's loss benefits to submit proof of a loss of support that would have been received but for the decedent's death. MCL 500.3108(1); MSA 24.13108(1); see also *Fredericksen v State Farm Mut Automobile Ins Co*, 141 Mich App 235, 237-239; 366 NW2d 256 (1985).

The trial court determined that the diminution of the trust principal was the measure of plaintiff's loss. However, plaintiff would not have received these funds if his mother had lived because the trust would have continued in her name. Furthermore, even though plaintiff became the beneficiary of the trust after his mother's death, he was not allowed access to the principal until he was twenty-five years old. The trust principal was reduced by the payment of taxes and administrative expenses, and therefore the income used to support plaintiff decreased, but there was no factual showing of the effect of the dimin-

ished trust principal on the support plaintiff received during the three years following his mother's death. Plaintiff was not allowed unfettered access to the interest from the trust in the three years following his mother's death, because he was not yet eighteen years old, and he could not have chosen to withdraw the entire interest.

The trial court erred in not requiring plaintiff to prove the amount of support he received from the trust before his mother's death and the amount of support he received from the trust after his mother's death. This comparison is the proper measure of plaintiff's loss of support that he would have received but for his mother's death under the plain meaning of the statute. See MCL 500.3108(1); MSA 24.13108(1). While plaintiff argues the difficulty of such proofs for a dependent who is a minor at the time of the decedent's death, the statute requires a showing of "demonstrable 'contributions' " that he would have received from his mother but for her death. See *Miller, supra* at 570.

Therefore, we reverse the trial court's order entered May 19, 1997, granting plaintiff a directed verdict and judgment, and the court's order entered January 23, 1997, granting plaintiff summary disposition with respect to liability. We also reverse the trial court's order entered August 29, 1996, denying defendant's motion for summary disposition, because plaintiff demonstrated below, when challenged to show that he suffered a loss under the same standard we now hold is required by MCL 500.3108; MSA 24.13108, that there is no evidence establishing a genuine issue of material fact with respect to whether he would have received some greater amount of support

but for his mother's death and thus that he is entitled to no-fault survivor's loss benefits.

In light of our holding regarding the issue discussed above, we need not address defendant's contention that the trial court erred in "amortizing" the payment of taxes and administrative expenses over the three-year period allowed by the statute rather than having them apply only to the month in which they were paid.

Reversed. We instruct the trial court to enter judgment in favor of defendant. MCR 7.216. We do not retain jurisdiction.