*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

RACHEL A. SLOCUM,

    Plaintiff-Appellant/Cross-Appellee,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

    Defendant/Cross-Plaintiff-
    Appellee/Cross-Appellant,

and

UNITED SERVICES AUTOMOBILE
ASSOCIATION,

    Defendant/Cross-Defendant-
    Appellee/Cross-Appellant.

FOR PUBLICATION
June 18, 2019
9:05 a.m.

No. 343333
Eaton Circuit Court
LC No. 2017-000375-NF

---

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

    Plaintiff-Appellee/Cross-Appellant,

v

RACHEL A. SLOCUM, Individually and as Next
Friend of NOAH J. SINKE SLOCUM, a Minor,

    Defendant-Appellant/Cross-
    Appellee,

and

CAROLINE SLOCUM, Next Friend and

No. 343409
Eaton Circuit Court
LC No. 2017-000188-NF

-1-

Conservator of DRAYKE SLOCUM and DAYJA
SLOCUM, Minors,

        Defendant-Appellant/Cross-
        Appellee.

---

Before: METER, P.J., and JANSEN and M. J. KELLY, JJ.

METER, P.J.

In these consolidated cases, the parties challenge the trial court's orders requiring the insurers to pay certain survivor's loss benefits under the no-fault act, as well as penalty interest and attorney fees. In pertinent part, we are called upon to decide whether a deceased's dependents are entitled to the replacement cost of obtaining medical and dental benefits similar to those provided by the deceased's former employer or to the monetary value of the premiums paid by the former employer. Recognizing that the survivor's loss provisions of the no-fault act are designed to maintain the deceased's support of his dependents following his death, we conclude that the dependents are entitled to the cost of obtaining substantially similar policies to those provided them by the deceased's former employer. Finding no errors, we affirm the trial court's orders.

## I.  BACKGROUND

Robert Slocum was killed in a motorcycle accident on August 4, 2016. At the time of the accident, Robert[1] was married to Rachel Slocum. Rachel is the biological mother of one minor child, Noah, whom Robert had adopted. Robert also had two minor children—Drayke and Dayja—from his previous marriage to Amber Floyd. At the time of the accident, all three of Robert's children lived with him and Rachel. Rachel and the children depended on Robert for financial support and medical and dental insurance—among other support—which Robert received through his employer. Caroline Slocum is Robert's mother and the children's paternal grandmother; David Slocum is the children's paternal grandfather. Farm Bureau General Insurance Company and United States Automobile Association insured vehicles involved in the fatal accident.

One week after the accident, Caroline filed a petition for guardianship over Drayke and Dayja. On August 18, 2016, Rachel submitted a claim to Farm Bureau and USAA for no-fault and survivor's benefits for her and all three children. Rachel requested that the insurers pay all benefits to her, indicating that all three children were living with her at the time and submitting documentation supporting her request for immediate payment of Robert's monthly after-tax income, $2,097.33. Rachel also claimed entitlement to lost fringe benefits, including medical and dental insurance. Farm Bureau requested that Rachel authorize the release of Robert's

---

[1] Given that many parties in this case share a common surname, we will use first names in this opinion where helpful to avoid any confusion.

medical records, which she completed in late August. The insurers did not immediately pay Rachel any benefit.

Then, on October 5, 2016, Rachel sent Farm Bureau a follow-up letter with additional documentation of Robert's wages and the medical and dental insurance previously provided by Robert's employer. Rachel also included some information regarding the cost for replacing this insurance for her and each child. The letter indicated that Rachel was not the biological mother of Drayke and Dayja, whose paternal grandparents had recently been appointed temporary guardians over them. On October 21, 2016, however, the probate court[2] granted Floyd sole legal and physical custody of Drayke and Dayja and awarded Caroline and David grandparenting time with the children.

Farm Bureau requested additional information regarding each dependent's Social Security benefits. In a November 16, 2016, letter, Rachel informed Farm Bureau that she was receiving Noah's $467 Social Security benefit, that she was not personally receiving any Social Security benefits, and that Floyd was receiving Drayke and Dayja's benefits. Rachel did not provide information regarding the amount of Drayke and Dayja's Social Security benefits.

In January 2017, Rachel's counsel emailed Farm Bureau additional documentation pertaining to Rachel's appointment as personal representative of Robert's estate. The emails indicate that Drayke and Dayja were currently in Caroline and David's custody. Approximately three weeks later, on February 13, 2017, Farm Bureau filed a complaint for declaratory relief, asking the trial court for a determination of the proper payees of the survivor's loss benefits and how to distribute the benefits among Robert's dependents. The complaint identified Floyd as Drayke and Dayja's next friend.

Farm Bureau acknowledged that it was responsible for paying survivor's loss benefits under MCL 500.3108 and agreed that Rachel provided sufficient proof to determine after-tax income and replacement-services benefits. Farm Bureau alleged, however, that Rachel did not provide proof of Robert's employer's contribution to the medical- and dental-insurance policies covering Robert and his four dependents or adequate proof of the amount of Social Security benefits Robert's dependents' received. Rachel later filed a complaint against Farm Bureau and USAA. Rachel alleged that Farm Bureau and USAA failed to pay each dependent the survivor's loss benefits and requested penalty interest and reasonable attorney fees connected to the refusal. The two actions were consolidated by the parties' agreement.

In June 2017, Floyd's attorney contacted counsel for Farm Bureau, indicating that Floyd was granted custody of Drayke and Dayja that month. Floyd was encouraged to enter her appearance and participate in the case, but did not do so. In July 2017, the probate court appointed Caroline as Drayke's and Dayja's conservator. Eventually a default judgment was entered against Floyd and Caroline was appointed next friend for Drayke and Dayja in October 2017. That same month, by Farm Bureau and USAA's stipulation, the trial court ordered that

---

[2] The same judge presided over the custody dispute and the instant insurance dispute.

each insurer was in equal priority to pay any survivor's loss benefits owed to Robert's four dependents.

As of late October 2017, however, the insurers claimed that they still did not know how to apportion the survivor's loss benefits or who to pay the benefit to, given that Caroline had yet to file her appearance. The insurers asked the trial court to allow them to pay the total amounts owed to the trial court until the proper payees and apportionment could be determined. In early November, Rachel's counsel entered his appearance as Caroline's attorney and filed a response proposing an apportionment of the wage-loss benefits between the four dependents and asking the trial court to order the insurers to pay the amount necessary for the dependents to obtain equivalent policies for the dependents. The insurers disagreed, arguing that they were required to pay only the amount Robert's previous employer contributed to the medical- and dental-insurance policies, not the cost to replace the policies. The trial court ordered the insurers to pay the amounts that were not disputed to the court pending final resolution of the dispute.

Subsequently, Rachel and Caroline filed a motion for partial summary disposition, arguing that they were entitled to statutory penalty interest and attorney fees on the overdue wage benefits. Farm Bureau responded that, while it did not dispute its liability for survivor's loss benefits, it should not be liable for statutory interest or attorney fees because it did not know what benefits to pay to which parties, a question that remained unanswered to date. For its part, USAA argued that it should not be liable for statutory interest or attorney fees because Farm Bureau was the lead insurer and because questions still existed regarding what benefits to pay which parties.

In December 2017, the trial court apportioned the money the insurers previously paid to the trial court pursuant to its November 2017 order, with $4,000 in replacement service benefits and $7,345.38 in lost after-tax wages going to Rachel and $793.38 of lost after-tax wages going to each of the three children. Then, in January 2018, the trial court addressed the parties' arguments regarding medical and dental insurance, penalty interest, and attorney fees.

The trial court determined that the custody issue, which arose after Rachel submitted the initial claim for benefits, raised a question about who should have been paid benefits on behalf of Drayke and Dayja, so the trial court limited the award of penalty interest to the first undisputed payment owed in the amount of $2,097.33. The trial court agreed with the insurers that "the custody matter complicated this case greatly," but commented that the custody issue did not arise until after the original claim was made. The trial court concluded that Farm Bureau was liable for reasonable attorney fees incurred by Rachel in connection with the initial delayed payment only.

Regarding medical and dental benefits, the trial court noted that the custody dispute and the procurement of separate policies were the result of the deceased's death and that only one medical and one dental policy would have been necessary had the accident not occurred. The trial court concluded that the "contributions of tangible things of value" that each dependent received from Robert were the actual medical and dental benefits, not the premiums paid for those benefits. Accordingly, the trial court found that the insurers were liable for the "replacement cost or expense" to each dependent of "substantially similar" medical and dental benefits to those they received from Robert.

Farm Bureau, Rachel, and Caroline moved for reconsideration of the trial court's orders. This appeal followed the trial court's denial of those motions.

## II. ANALYSIS

"The goal of the no-fault insurance system [is] to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Shavers v Attorney General*, 402 Mich 554, 578-579; 267 NW2d 72 (1978). The no-fault act designates the beneficiaries of personal protection insurance:

> Personal protection insurance benefits are payable to or for the benefit of an injured person or, in case of his death, to or for the benefit of his dependents. Payment by an insurer in good faith of personal protection insurance benefits, to or for the benefit of a person who it believes is entitled to the benefits, discharges the insurer's liability to the extent of the payments unless the insurer has been notified in writing of the claim of some other person. If there is doubt about the proper person to receive the benefits or the proper apportionment among the persons entitled thereto, the insurer, the claimant or any other interested person may apply to the circuit court for an appropriate order. The court may designate the payees and make an equitable apportionment, taking into account the relationship of the payees to the injured person and other factors as the court considers appropriate. In the absence of a court order directing otherwise the insurer may pay:

> * * *

> (b) To the surviving spouse, the personal protection insurance benefits due any dependent children living with the spouse. [MCL 500.3112.]

Survivor's loss benefits payable to a deceased insured's dependents include the following:

> contributions of tangible things of economic value, not including services, that dependents of the deceased at the time of the deceased's death would have received for support during their dependency from the deceased if the deceased had not suffered the accidental bodily injury causing death and expenses, not exceeding $20.00 per day, reasonably incurred by these dependents during their dependency and after the date on which the deceased died in obtaining ordinary and necessary services in lieu of those that the deceased would have performed for their benefit if the deceased had not suffered the injury causing death. [MCL 500.3108(1).]

Accordingly, survivor's loss benefits have two components: "(1) economic loss . . . , which is the loss of contributions of tangible things of economic value, not including services, and (2) replacement services costs . . . , which are the expenses, not exceeding $20 a day, reasonably incurred in replacing ordinary and necessary services." *Wood v Auto-Owners Ins Co*, 469 Mich 401; 404; 668 NW2d 353 (2003). "[T]he phrase 'tangible things of economic value' refers to *something* that is capable of being valued or having its worth ascertained." *Scugoza v Metro Direct Prop & Cas Ins Co*, 316 Mich App 218, 224; 891 NW2d 274 (2016).

In this case, the parties agree that Robert's medical and dental insurance and after-tax wages constitute "tangible things of economic value" within the meaning of MCL 500.3108(1). The parties dispute, however, how the insurers were to compensate Robert's dependents for their loss of his medical and dental benefits and whether the insurers unjustifiably delayed in compensating the dependents for Robert's lost wages. We address each argument in turn.

## A. MEDICAL AND DENTAL BENEFITS

The insurers in this case do not dispute that Robert's dependents were entitled to compensation for lost medical and dental benefits provided by Robert's former employer. The insurers argue, however, that the trial court erred by awarding the dependents the cost of procuring similar medical and dental policies, i.e., the replacement cost of those policies. According to the insurers, MCL 500.3108 entitled the dependents only to the amount Robert's employer actually contributed to the medical and dental policies, i.e., the prior financial outlay for those benefits.

"The primary rule of statutory construction is to effectuate the intent of the Legislature, and where the statutory language is clear and unambiguous, it is generally applied as written." *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 482; 673 NW2d 739 (2003). "Given the remedial nature of the no-fault act, courts must liberally construe its provisions in favor of the persons who are its intended beneficiaries." *Frierson v West American Ins Co*, 261 Mich App 732, 734; 683 NW2d 695 (2004) (internal citation and block notation omitted).

As already noted, survivor's loss benefits payable to a deceased insured's dependents include "contributions of tangible things of economic value, not including services, that dependents of the deceased at the time of the deceased's death would have received for support during their dependency from the deceased if the deceased had not suffered the accidental bodily injury causing death." MCL 500.3108(1). The insurers argue that our Supreme Court's opinion in *Miller v State Farm Mut Auto Ins Co*, 410 Mich 538; 302 NW2d 537 (1981), entitles dependents only to the monetary cost of the insurance policies, as paid by the deceased's former employer. In the context of deciding whether a survivor's loss benefit included the deceased's gross or after-tax wages, the *Miller* court explained that "the 'tangible things of economic value' which many persons contribute to the support of their dependents include hospital and medical insurance benefits, disability coverage, pensions, investment income, annuity income and other benefits." *Id*. at 557. Our Supreme Court noted that, by using the broader phrasing of "contributions of tangible things of economic value," the Legislature intended to include "benefits derived for family support from other and different sources" beyond wages and salary. *Id*. In other words, "[t]he dollar value of such items as employer-provided medical insurance coverage, pensions, disability benefits, and other tangible things of economic value that are lost to the surviving dependents by reasons of the insured's death must be taken into account" when determining the survivor's loss benefit. *Id*. at 561.

The parties also discuss this Court's ruling in *Gauntlett v Auto-Owners Ins Co*, 242 Mich App 172; 617 NW2d 735 (2000). The *Gauntlett* plaintiff was a minor whose mother died after a car accident. *Id*. at 174. While living, the plaintiff's mother derived her income solely as the beneficiary of a trust, and the plaintiff became the sole beneficiary of that trust after his mother died. *Id*. The insurer refused to pay the plaintiff a survivor's loss benefit, arguing that the

plaintiff did not demonstrate a loss when he continued to receive payments from the trust. *Id*. The plaintiff argued that he suffered a loss in investment income when "the trust corpus was decreased because of the estate and inheritance taxes, funeral expenses, and bequests." *Id*. The trial court ruled that "the measure of loss was the decrease in the income-producing assets and not the actual trust disbursements." *Id*. at 176. This Court disagreed because the "plaintiff would not have received these funds if his mother had lived because the trust would have continued in her name." *Id*. at 185. This Court ruled that the difference between the amount of "support" the plaintiff received from the trust before and after his mother's death was the proper measure of the plaintiff's loss, not the change to the trust corpus. *Id*. at 186.

These cases do not directly address the issue at hand. While *Miller* establishes that MCL 500.3108 entitles survivors to fringe benefits, including the value of medical and dental benefits, it does not address how to determine the monetary value of these benefits. Rather, in *Miller*, the plaintiffs submitted no evidence beyond documentation of the deceased's wages, so our Supreme Court concluded that the trial court did not err by limiting the calculated benefit to wages. *Miller*, 410 Mich at 560-562. For its part, the factual situation in *Gauntlett* is unique; the difficulty in comparing a trust corpus to employer-provided insurance is facially apparent.

Yet, although these cases do not directly address the issue here, they are helpful to the extent that they clarify that the central question in any MCL 500.3108 analysis is what the dependents would have received if the deceased had not died. The goal of the survivor's loss provision is to maintain the level of support the survivor received from the deceased, not to maintain the finances sustaining that support. It is noteworthy that the Legislature chose to provide compensation for "contributions of tangible *things* of economic value . . . that dependents . . . would have received for support during their dependency." MCL 500.3108(1) (emphasis added). Had the Legislature intended to continue only the previous financial outlays through the survivor's loss benefit, rather than the resulting *thing*s those outlays contribute to the dependent's support, it would have stated as much.[3]

In this case, the tangible *thing* of economic value was the dependents' medical and dental insurance, not the premiums paid for the insurance by Robert's employer. If Robert had lived and continued working, his dependents would have continued to receive medical and dental insurance coverage through Robert's employer. It is particularly noteworthy that the increased cost of insurance was a result of Robert's death; had Robert not been involved in the accident, the children would have remained in his care and would have been supported by the same insurance policies. Because the monetary value of the pre-accident premium would have been insufficient to maintain Robert's dependents' level of support after his death, the trial court

---

[3] That the maintenance of support is the central object of MCL 500.3108 is also made evident by the fact that the survivor's benefit is offset by the contribution made to the dependent's support by Social Security programs. See *Wood*, 469 Mich at 404-406. While the total amount of support remains the same, it is maintained by a conglomerate of contributors following the deceased's death.

properly concluded that the insurers were liable for the cost of coverage substantially similar to what Robert's dependents received before Robert died.[4]

## B. PENALTY INTEREST AND ATTORNEY FEES

The parties do not dispute that Robert's dependents were entitled to compensation for lost after-tax income. Rather, they dispute whether and when Farm Bureau received reasonable proof of the fact and amount of the loss sustained. The dependents argue that they are entitled to statutory interest and attorney fees on the entirety of the refused payments; Farm Bureau avers that no award of statutory interest or attorney fees was warranted.[5] We agree with the trial court that Rachel was entitled to statutory interest and attorney fees in relation to the first requested payment, but that the dependents were not entitled to statutory interest and attorney fees in relation to the remainder of the unpaid benefits.

The no-fault act provides for interest on overdue benefits as follows:

> (1) Personal protection insurance benefits are payable as loss accrues.

> (2) Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Any part of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. . . .

> (3) An overdue payment bears simple interest at the rate of 12% per annum. [MCL 500.3142.]

The penalty interest provision "is intended to penalize an insurer that is dilatory in paying a claim." *Williams v AAA Michigan*, 250 Mich App 249, 265; 646 NW2d 476 (2002). "Penalty interest must be assessed against a no-fault insurer if the insurer refused to pay benefits, irrespective of the insurer's good faith in not promptly paying the benefits. *Id.* In addition to penalty interest, the no-fault act provides for payment of attorney fees for an unjustified refusal:

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which

---

[4] The insurers argue that this resolution doubly compensates Robert's dependents because Robert's contribution to their insurance coverage when he was alive came out of his wages, for which his dependents are also receiving compensation. Robert's earnings statements show, however, that his contribution to insurance came out of his pretax income. Because the wage-loss provided by the insurers only compensates Robert's dependents for the loss of Robert's after-tax wages, there is no double compensation.

[5] USAA did not address this issue in its appellate brief.

are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment. [MCL 500.3148(1).]

Attorney fees are not warranted when the benefits "were reasonably in dispute, or, stated slightly differently, benefits [were] not yet overdue." *Moore v Secura Ins*, 482 Mich 507, 519; 759 NW2d 833 (2008). "[A] delay is not unreasonable if it is based on a legitimate question of statutory construction, constitutional law, or factual uncertainty. When an insurer refuses to make or delays in making payment, a rebuttable presumption arises that places the burden on the insurer to justify the refusal or delay." *Attard v Citizens Ins Co of America*, 237 Mich App 311, 317; 602 NW2d 633 (1999) (internal citations omitted). The determinative question "is not whether the insurer ultimately is held responsible for benefits, but whether its initial refusal to pay was unreasonable." *Ross v Auto Club Group*, 481 Mich 1, 11; 748 NW2d 552 (2008).

The dependents argue that they are entitled to statutory interest and attorney fees on the entirety of the delayed payments. We disagree. In her initial application for lost after-tax income, Rachel provided proof of the amount of lost wages, $2,097.33, and supported this amount with Robert's last two earnings statements and his tax returns. Rachel also indicated that all three children were living with her at the time. Farm Bureau does not argue that Rachel failed to provide adequate proof of the amount of loss; rather, Farm Bureau argues that it could not reasonably determine to whom it was to pay the benefit because, as indicated on the application, the children were too close in age to be Rachel's biological children. The no-fault act, however, does not require the recipient of insurance disbursements to be the children's biological parent. As noted previously, "[p]ersonal protection insurance benefits are payable to or for the benefit of an injured person or, in case of *his* death, to or for the benefit of *his* dependents." MCL 500.3242(a) (emphasis added). The benefit is payable to the surviving spouse of the deceased provided only that the deceased's "dependent children [are] living with the spouse." MCL 500.3242(b).

Thus, the fact that a question existed regarding which children were Rachel's biological children was not sufficient, on its own, to deny her payment of the benefit. The relevant question, rather, was whether the children were living with Rachel during the time period relevant to the request. Regarding the first application for benefits, Farm Bureau has not pointed to anything that would create a question whether the children were living with Rachel at the time. Indeed, the parties do not dispute that the children were actually living with Rachel on September 17, 2016, at which time the 30-day investigatory deadline expired and the first benefit became due. As recognized by the trial court, the custody dispute did not arise until *after* the first benefit was due. Accordingly, we agree with the trial court that Rachel was entitled to statutory interest for Farm Bureau's failure to timely pay the first requested benefit and to attorney fees in relation to this first refusal.

As for the remainder of the benefit, however, we agree with Farm Bureau that the insurers did not receive reasonable proof of the proper payees and the amount owed to each dependent. Beginning with Rachel's October 5th acknowledgment that Drayke and Dayja were not her children and were not living with her and continuing throughout the custody dispute and the initiation of this case, substantial questions surrounded Drayke and Dayja's legal guardian

and living arrangements. Indeed, the insurers were not informed that they should pay Drayke and Dayja's benefits to Caroline until after the commencement of this suit.

Moreover, the economic loss component of survivor's loss benefits must be offset by Social Security benefits. *Wood*, 469 Mich at 404-406. Despite requesting benefit information for all three children, the insurers did not receive information regarding Drayke and Dayja's Social Security disbursements until discovery in this case. Therefore, the insurers could not reasonably determine how to apportion the wage-loss benefit between Rachel and the three children before the commencement of this suit.

Accordingly, because questions existed regarding who were the children's proper payees and how to apportion benefits between the dependents, we agree with the trial court that the insurers were not required to pay penalty interest on the remaining requested payments. Additionally, because the insurers did not unjustifiably refuse the remaining requested payments, we conclude that the trial court did not err by limiting recovery of attorney fees to those expended by counsel in relation to payment of the first requested wage-loss benefit.[6]

III. CONCLUSION

The survivor's loss provisions of the no-fault act are designed to maintain the support an insured's dependents received before a fatal accident. When an insured's death splits custody for dependents previously covered under a single medical- or dental-insurance policy, the dependents are entitled to the cost of replacing the coverage they enjoyed before the deceased's death, not merely the monetary value of the prior premiums. For the reasons stated in this opinion, we affirm the trial court's orders awarding Robert's dependents the cost of obtaining substantially similar medical and dental benefits to those that they received from Robert's employer and awarding Rachel statutory interest and attorney fees in connection with the insurers delay in paying the first requested wage-loss benefit.

/s/ Patrick M. Meter
/s/ Kathleen Jansen
/s/ Michael J. Kelly

---

[6] We disagree with Rachel that she is entitled to attorney fees on the entire case because separating fees would be "a logistical nightmare." Attorneys are required to keep regular, itemized records of the hours expended on a case. Rachel has not shown that it is impracticable to distinguish between services rendered to recover the first requested payment and those provided for other purposes or to apportion payment for services rendered for multiple purposes. We note that the initial unjustified delay makes up the minority of the delayed payments in this case and that granting Rachel attorney fees on the entire case would effectively give her a "windfall" when the majority of delays were not unjustified.