# STATE OF MICHIGAN

# COURT OF APPEALS

KAREN SCUGOZA,

Plaintiff-Appellee,

v

METROPOLITAN DIRECT PROPERTY AND
CASUALTY INSURANCE COMPANY,

Defendant-Appellant.

FOR PUBLICATION
July 5, 2016
9:00 a.m.

No. 327076
Branch Circuit Court
LC No. 14-090510-NF

Before: STEPHENS, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM.

At issue in this case is whether old-age social security benefits payable pursuant to 42 USC 402 are "tangible things of economic value" as that term is used in MCL 500.3108(1) and therefore can be considered in a calculation of survivors' loss benefits under the no-fault act. The trial court determined that old-age social security benefits were, under the plain language of MCL 500.3108(1), "tangible things of economic value," and granted plaintiff partial summary disposition pursuant to MCR 2.116(C)(10). Defendant appeals that ruling by leave granted. Because we conclude that the plain language of MCL 500.3108(1) encompasses old-age social security benefits, we affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The pertinent facts in this case are undisputed. Plaintiff's husband, Nicholas Scugoza, died on September 20, 2013, as a result of injuries he suffered in a car accident in Branch County. At the time he died, Nicholas was entitled to a gross sum of $1,611.90 per month in old-age social security benefits.

Plaintiff applied to defendant, Nicholas's insurer, for survivors' loss benefits under the no-fault act, MCL 500.3101 *et seq.* On September 22, 2014, plaintiff sued defendant for refusing to pay the "correct and full amount of no-fault motor vehicle insurance [survivors'] loss benefits for which she is eligible and entitled to receive as the surviving spouse of Nicholas Scugoza." On January 14, 2015, plaintiff moved for partial summary disposition, arguing that there were no

genuine issues of material fact and that as a matter of law, survivors' loss benefits under MCL 500.3108(1)[1] included a calculation of old-age social security benefits a deceased spouse had been receiving prior to his death. Plaintiff argued that old-age social security benefits were akin to a pension and were thus a "tangible thing of economic value" under MCL 500.3108(1).

In a written opinion, the trial court examined the plain language of MCL 500.3108(1) in order to determine whether the statute applied to old-age social security benefits. The court reasoned that MCL 500.3108(1), which broadly referred to "contributions of tangible things of economic value" in describing survivors' loss benefits, encompassed old-age social security benefits. Accordingly, the trial court granted plaintiff's motion for partial summary disposition.

## II. ANALYSIS

We review de novo a trial court's decision regarding a motion for summary disposition. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). Summary disposition is proper under MCR 2.116(C)(10) if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id*. Questions of statutory interpretation are questions of law, which this Court reviews de novo. *Shorecrest Lanes & Lounge, Inc v Liquor Control Comm*, 252 Mich App 456, 460; 652 NW2d 493 (2002).

"In general, the no-fault act is designed to achieve the expeditious compensation of damages resulting from motor vehicle accidents and to minimize administrative delays and factual disputes." *Brown v Home-Owners Ins Co*, 298 Mich App 678, 685; 828 NW2d 400 (2012). The no-fault act provides that "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of" the no-fault act. MCL 500.3105(1). As noted above, the no-fault act includes personal protection insurance ("PIP") benefits for survivors' loss, and provides in pertinent part:

> [P]ersonal protection insurance benefits are payable for a survivor's loss which consists of a loss, after the date on which the deceased died, of *contributions of tangible things of economic value*, not including services, that dependents of the deceased at the time of the deceased's death would have received for support during their dependency from the deceased if the deceased had not suffered the accidental bodily injury causing death and expenses, not exceeding $20.00 per day, reasonably incurred by these dependents during their dependency and after

---

[1] MCL 500.3108(1) provides, in pertinent part:

> Except as provided in subsection (2), personal protection insurance benefits are payable for a survivor's loss which consists of a loss, after the date on which the deceased died, of contributions of tangible things of economic value, not including services, that dependents of the deceased at the time of the deceased's death would have received for support during their dependency from the deceased if the deceased had not suffered the accidental bodily injury causing death . . . .

the date on which the deceased died in obtaining ordinary and necessary services in lieu of those that the deceased would have performed for their benefit if the deceased had not suffered the injury causing death.    [MCL 500.3108(1) (emphasis added).]

In this case, there is no dispute that plaintiff was a dependent of Nicholas under the no-fault act. See MCL 500.3110(1)(a). There is no dispute that Nicholas's death arose "out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle," MCL 500.3105(1), and that his death constituted an accidental bodily injury under the no-fault act, MCL 500.3105(3). There is also no dispute that defendant was Nicholas's insurer. Therefore, defendant is obligated under the no-fault act to plaintiff for "loss, after the date on which the deceased died, of contributions of tangible things of economic value" that plaintiff "at the time of the deceased's death would have received for support during [her] dependency from the deceased if the deceased had not suffered the accidental bodily injury causing death[,]" i.e., survivors' loss benefits. MCL 500.3108(1).

The dispute in this case concerns the meaning of the phrase "contributions of tangible things of economic value," and whether the plain meaning of the phrase encompasses old-age social security benefits Nicholas had been receiving.

As with any statutory interpretation, [a reviewing court's] goal is to give effect to the Legislature's intent, focusing first on the statute's plain language. When the language of a statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted. [*Krusac v Covenant Med Ctr, Inc*, 497 Mich 251, 255-256; 865 NW2d 908 (2015) (citations omitted).]

In short, when the language is unambiguous, statutory interpretation begins and ends with the words of the statute. See *id*.

None of the terms in the phrase "contributions of tangible things of economic value" are defined in the statute; thus, we may consult a dictionary in ascertaining the plain meaning of the terms. *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). The phrase "contributions of tangible things of economic value" has no inherent limitation on the type of contributions received for support other than: (1) the contribution must be tangible; and (2) the contribution must have economic value. The word "tangible" has been defined to mean "capable of being appraised at an actual or approximate value . . . ." *Meriam Webster's Collegiate Dictionary* (11th ed). Meanwhile, "economic value"—sometimes referred to as "exchange value"—means "[t]he rate of worth set on property . . . ." *Black's Law Dictionary* (10th ed), p. 1785. Using dictionary definitions, it is apparent that the phrase "tangible things of economic value" refers to *something* that is capable of being valued or having its worth ascertained.

Moreover, it is equally apparent that the old-age social security benefits at issue in this case fit within the plain language of the statute. Indeed, the benefits are capable of being valued and do in fact have a "rate of worth." The benefits in this case were distributed on a monthly basis at a predetermined monthly value, as revealed by letters sent to Nicholas by the Social Security Administration. "The purpose of the Federal Old Age Benefits of the Social Security

-3-

Act is *to provide funds* through contributions by employer and employee for the *decent support* of elderly workmen who have ceased to labor." *Social Security Bd v Nierotko*, 327 US 358, 364; 66 S Ct 637; 90 L Ed 718 (1946) (emphasis added). Our courts, too, have characterized old-age social security benefits as a type of income, albeit a type of income not received from employment. See *Jarosz v DAIIE*, 418 Mich 565, 585; 345 NW2d 563 (1984). In other words, it is apparent that old-age social security benefits are designed as a tangible means of financial support. And, according to the pleadings in this case, the old-age social security benefits were a "tangible thing[ ] of economic value" that Nicholas used as support for his dependent, i.e., his wife, plaintiff Karen Scugoza.

Although it did so in a different context, our Supreme Court has already had occasion to interpret the phrase "contributions of tangible things of economic value" under MCL 500.3108(1). See *Miller v State Farm Mut Auto Ins Co*, 410 Mich 538; 302 NW2d 537 (1981). Reviewing the plain language of the statute, the Court in *Miller* concluded that the Legislature intended for a broad understanding of the phrase "contributions of tangible things of economic value":

> The language of § 3108 . . . establishes that it is the legislative intention that the calculation of "contributions of tangible things of economic value" *should include consideration of all demonstrable contributions* that would have been made to the dependents by the deceased but for his death . . . . [*Id.* at 550 (emphasis added).]

The Court rejected an argument that "contributions of tangible things of economic value" were limited to wages and salary, and gave a non-exhaustive list of potential "tangible things of economic value":

> In today's complex economic system, the "tangible things of economic value" which many persons contribute to the support of their dependents include hospital and medical insurance benefits, disability coverage, pensions, investment income, annuity income and other benefits. Had it been the intent of the Legislature to limit survivors' benefits to a sum equal to what eligible dependents would have received from wages and salary alone, it could be expected to have said so. It chose instead the far broader category of "contributions of tangible things of economic value" which, on its face, suggests the inclusion of benefits derived for family support from other and different sources. [*Id.* at 556-557.]

Following *Miller*, this Court has applied the broad construction of "contributions of tangible things of economic value," finding that the phrase encompassed loans an unemployed deceased used to sustain herself and her children, *McCollum v Community Serv Ins Co*, 137 Mich App 805, 811; 359 NW2d 215 (1984), child support payments a deceased was obligated to make, *Fredericksen v State Farm Mut Auto Ins Co*, 141 Mich App 235, 238-239; 366 NW2d 256 (1985), and funds received from a trust of which the deceased was a beneficiary, *Gauntlett v Auto-Owners Ins Co*, 242 Mich App 172, 180-181; 617 NW2d 735 (2000).

We find that the Supreme Court's interpretation of MCL 500.3108 in *Miller* supports the conclusion that old-age social security benefits are to be included in the calculation of survivors' loss benefits under the no-fault act. As noted, old-age social security benefits are intended to function as a means of financial support or income for recipients. Therefore, as with "wage or salary income[, which] is almost always a significant factor in calculating the actual financial loss incurred by survivors[,]" Nicholas's old-age social security benefits were " 'tangible things of economic value' available for dependents' support . . . ." *Miller*, 410 Mich at 561. Old-age social security benefits end "with the month preceding the month in which" the recipient dies. 42 USC 402(a). Therefore, Nicholas's old-age social security benefits were "tangible things of economic value that" were "lost" to plaintiff "by reason of [Nicholas]'s death[.]" *Miller*, 410 Mich at 561. As the Supreme Court stated, "the Legislature intended that the measurement of [MCL 500.]3108 survivors' loss benefits should include the value of tangible things other than, and in addition to, wages and salary." *Id.* If the Legislature had intended to exclude governmental benefits from survivors' loss benefits under MCL 500.3108, "it could be expected to have said so." *Id*. at 557. Thus, we conclude that Nicholas's old-age social security benefits are included within plaintiff's survivors' loss benefits under MCL 500.3108(1).

Defendant argues that the legislative history of MCL 500.3108(1) demonstrates that old-age social security benefits are not compensable under MCL 500.3108(1). Defendant argues that the legislative history of MCL 500.3108 evidences an intent to make survivors' loss benefits comparable to compensation available for economic losses under the wrongful death act, MCL 600.2922. In a conclusory and somewhat circular fashion, defendant contends that there is no authority for the proposition that old-age social security benefits are compensable in a wrongful death action; hence, there is no authority for the idea that old-age social security benefits are compensable as part of a survivors' loss claim under MCL 500.3108(1).

At the outset, we note our Supreme Court's distaste for legislative history, describing it as "a feeble indicator of legislative intent and is therefore a generally unpersuasive tool of statutory construction." *Frank W Lynch & Co v Flex Tech, Inc*, 463 Mich 578, 587; 624 NW2d 180 (2001). Moreover, we find that the legislative history of MCL 500.3108 supports our conclusion. The Court in *Miller* examined the legislative history of MCL 500.3108 and concluded that the Legislature intended "that survivors' loss benefits should at least roughly correspond to economic loss damages recoverable under" the wrongful death act. *Miller*, 410 Mich at 560, citing MCL 600.2922. The wrongful death act, concluded the Court in *Miller*, allows for the recovery of economic losses which include "at a minimum, the loss of financial support from the deceased" and which "focus upon the financial loss actually incurred by the survivors as a result of their decedent's death." *Id*. at 560-561 (citations omitted). The amount of financial loss actually incurred, reasoned the Court, included the decedent's salary, as well as "the myriad employment-related fringe benefits and other 'tangible things of economic value' available for dependents' support described hereinbefore which are not always reflected in wage or salary . . . ." *Id*. at 561. In other words, recovery for economic losses in wrongful death actions includes, as does recovery for survivors' loss benefits under MCL 500.3108(1), a broad category of "tangible things of economic value." Hence, we do not find any restrictions on what is compensable under MCL 500.3108(1) as survivors' loss benefits—at least not with regard to what is sought in the instant case—from any references to wrongful death actions in MCL 500.3108's legislative history. Moreover, contrary to defendant's contentions, this Court has

found that social security benefits are compensable in a wrongful death action. See *Hoffman v Rengo Oil Co*, 20 Mich App 575, 577; 174 NW2d 155 (1969) (holding that a verdict in a wrongful death action was not excessive where the deceased's income was determined according to, among other things, the deceased's monthly social security benefits).

Defendant also argues that old-age social security benefits should not be included as survivors' loss benefits because they are not employment-related; rather, they are government benefits. This argument fails. First, there is no language in MCL 500.3108(1) indicating that the Legislature intended to limit survivors' loss benefits to benefits provided only by employers, and this Court "cannot and should not add requirements to the statute that are not found there." *Empire Iron Mining Partnership v Orhanen*, 211 Mich App 130, 135; 535 NW2d 228 (1995). Second, the Supreme Court stated that survivors' loss benefits include "the myriad employment-related fringe benefits *and other 'tangible things of economic value'* available for dependents' support . . . ." *Miller*, 410 Mich at 561 (emphasis added). Indeed, this Court has held that even things of tangible value without any relation whatsoever to employment may be compensable under MCL 500.3108(1). See *Gauntlett*, 242 Mich App at 181; *McCollum*, 137 Mich App at 811-812.

Defendant cites *Jarosz*, 418 Mich at 580-581, a case which dealt with old-age social security benefits in the context of MCL 500.3109, and argues that our caselaw treats old-age social security benefits differently from private employment benefits. Defendant's citation to *Jarosz* is unavailing, as that case did not discuss MCL 500.3108 or "tangible things of economic value." Moreover, the citation to *Jarosz* appears to implicate setoffs under MCL 500.3109, which is an entirely different matter and which is not before this Court in the instant case. As the trial court aptly noted, our Supreme Court has directed that in calculating survivors' loss benefits,[2] "one first determines what personal protection benefits are payable"; those benefits cannot exceed the statutory maximum set forth in MCL 500.3108(1). *Wood v Auto-Owners Ins Co*, 469 Mich 401, 405; 668 NW2d 353 (2003). This determination under MCL 500.3108 must occur *before* determining the amount, if any, by which survivors' loss benefits should be offset under MCL 500.3109, and "applying the setoff provision before completing the MCL 500.3108 analysis" constitutes error. *Wood*, 469 Mich at 406. Therefore, this Court's determination of whether old-age social security benefits are compensable under MCL 500.3108 must be made without regard to MCL 500.3109, and we do not weigh in on any matters pertaining to set-offs, or whether a set-off would even be appropriate in this case. *Id.*

---

[2] Survivors' loss benefits include economic loss, which is at issue in this case, as well as replacement services, which are not at issue in this appeal. MCL 500.3108(1); *Wood*, 469 Mich at 404.

Lastly, given our conclusion that the plain language of MCL 500.3108(1) encompasses old-age social security benefits, we decline plaintiff's invitation to determine whether old-age social security benefits are the equivalent of a "pension."[3]

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher

---

[3] Citing an article that has not been supplied to this Court, plaintiff argues that old-age social security benefits are a type of pension. According to plaintiff, because our Supreme Court in *Miller*, 410 Mich at 561, used the word "pensions" in describing "tangible things of economic value," *Miller* conclusively resolves this case. We need not entertain this argument because of our conclusion that the plain language of MCL 500.3108(1) is broad enough to include old-age social security benefits regardless of plaintiff's contentions that such benefits constitute a pension.