*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN AMBULATORY SURGICAL
CENTER and PHASE ONE REHAB, LLC,

        Plaintiffs-Appellants,

v

ESURANCE PROPERTY & CASUALTY
INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
February 13, 2026
9:15 AM

No. 369465
Macomb Circuit Court
LC No. 2023-001857-NF

Before: CAMERON, P.J., and M. J. KELLY and YOUNG, JJ.

PER CURIAM.

In this first-party action for payment of personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq*., plaintiffs, Michigan Ambulatory Surgical Center and Phase One Rehab, LLC, appeal as of right from the trial court order granting summary disposition to defendant, Esurance Property and Casualty Insurance Company. We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

This case arises from a May 8, 2022, motor vehicle crash in which plaintiffs' assignor and defendant's insured, Angela Howard, was injured. Plaintiffs' single-count complaint alleged statutory violations of the no-fault act over defendant's refusal to pay PIP benefits to plaintiffs after they provided medical care to Howard following the motor vehicle accident. Defendant moved for summary disposition, which was initially denied without prejudice. Thereafter, defendant filed a renewed motion for summary disposition, arguing that Howard had elected PIP coverage of $50,000 per person, per accident and that the coverage had been exhausted. In response, plaintiffs argued that Howard's selection was ineffective under administrative bulletins that had been issued by the Michigan Department of Insurance and Financial Services (DIFS). They also asserted that the $50,000 coverage limit had not been exhausted. The trial court granted defendant's renewed motion for summary disposition. This appeal follows.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Plaintiffs argue that the trial court erred by granting defendant summary disposition. We review de novo the trial court's decision on a motion for summary disposition. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks and citation omitted).]

Questions of statutory interpretation are reviewed de novo. *Bronson Health Care Group, Inc v Esurance Prop & Cas Ins Co*, 348 Mich App 428, 439; 19 NW3d 151 (2023).

### B. ANALYSIS

At issue in this appeal is MCL 500.3107c, which provides, in pertinent part:

> (1) Except as provided in [MCL 500.3107d and MCL 500.3109a], and subject to subsection (5), for an insurance policy that provides the security required under [MCL 500.3101(1)] and is issued or renewed after July 1, 2020, the applicant or named insured shall, in a way required under [MCL 500.3107e] and on a form approved by the director, select 1 of the following coverage levels for personal protection insurance benefits under [MCL 500.3107(1)(a)]:

> (a) A limit of $50,000.00 per individual per loss occurrence for any personal protection insurance benefits under [MCL 500.3107(1)(a)]. The selection of a limit under this subdivision is only available to an applicant or named insured if both of the following apply:

> (*i*) The applicant or named insured is enrolled in Medicaid, as that term is defined in [MCL 500.3157].

> (*ii*) The applicant's or named insured's spouse and any relative of either who resides in the same household has qualified health coverage, as that term is defined in [MCL 500.3107d], is enrolled in Medicaid, or has coverage for the payment of benefits under [MCL 500.3107(1)(a)] from an insurer that provides the security required by [MCL 500.3101(1)].

> * * *

> (2) The form required under subsection (1) must do all of the following:

(a) State, in a conspicuous manner, the benefits and risks associated with each coverage option.

(b) Provide a way for the applicant or named insured to mark the form to acknowledge that he or she has read the form and understands the options available.

(c) Allow the applicant or named insured to mark the form to make the selection of coverage level under subsection (1).

(d) Require the applicant or named insured to sign the form.

(3) If an insurance policy is issued or renewed as described in subsection (1) and the applicant or named insured has not made an effective selection under subsection (1) but a premium or premium installment has been paid, there is a rebuttable presumption that the amount of the premium or installment paid accurately reflects the level of coverage applicable to the policy under subsection (1).

Plaintiffs first argue that summary disposition was improperly granted because factual disputes remained regarding whether defendant issued the renewal no-fault policy to Howard before she signed an updated choice-of-coverage form. In support of its argument, plaintiffs request this Court to "defer" to DIFS's interpretation of MCL 500.3107c. Specifically, they direct this Court to DIFS Bulletin 2021-25-INS, which provides that an "effective selection" under MCL 500.3107c(1) occurs when "an applicant or named insured completes, signs, and returns to an insurer or agent [a change-of-coverage form], *whether at the initial application or the renewal*." [Emphasis added.]

Plaintiffs' argument is analogous to the argument raised by the plaintiff in *Bronson Health Care Group*, 348 Mich App at 442. In that case, the plaintiff asserted that the defendant did not comply with MCL 500.3107c(1) when the insured selected limited PIP medical coverage. The plaintiff specifically challenged effectiveness of the insured's selection on the basis that the no-fault insurer did not provide the insured with a copy of the choice-of-coverage form before the no-fault policy was purchased. In making that argument, the plaintiff relied on an "FAQ" issued by DIFS in which DIFS had stated that carriers were required to provide the choice-of-coverage form " 'at the time of new business.' " *Id*. The *Bronson* Court recognized that deference is generally afforded to an administrative agency's interpretation of the statute. *Id*. However, it reasoned:

There's nothing in the plain language of MCL 500.3107c(1) to suggest that it requires the PIP-selection form be provided to the insured before the policy is issued. Given this, DIFS's interpretation is clearly wrong because it adds a requirement to the statute that is not discernible from the statute's text. Accordingly, we need not defer to DIFS's interpretation, and we reject plaintiff's argument that the statute requires insureds to complete the PIP-selection form before coverage is issued. [*Id*. (quotation marks omitted.]

Under *Bronson*, therefore, although deference should be afforded to an administrative agency's interpretation of a statute, such deference should not be afforded when the agency's interpretation is incorrect. *Id*.

Here, notwithstanding that MCL 500.3107c(1) requires that, as it relates to all policies issued or renewed after July 1, 2020, the insured make a selection of the limits of their PIP coverage, the statute does not specially provide that an updated form be completed at each subsequent renewal of the policy. Further, although the statute contains several criteria regarding the choice-of-coverage form, the plain language of the criteria listed in MCL 500.3107c(2)(a) through (d) does not require that a new and updated choice-of-coverage form be provided by the named insured at each subsequent renewal. We are not permitted to insert into the statute a requirement that the Legislature itself did not include. *Scugoza v Metro Direct Prop & Cas Ins Co*, 316 Mich App 218, 228; 891 NW2d 274 (2016). Therefore, we conclude that the court did not err by granting summary disposition under MCR 2.116(C)(10), as material factual disputes did not remain on this issue.

Plaintiffs also argue that Howard's selection was not effective under MCL 500.3107c(1) because defendant did not obtain proof of Howard's Medicaid enrollment when her no-fault policy was renewed. In support of their claim of error, plaintiffs point to DIFS Bulletin 2020-33-INS, effective July 28, 2020, and DIFS Bulletin 2023-17-INS, effective June 22, 2023. Both DIFS Bulletin 2020-33-INS and DIFS Bulletin 2023-17-INS required or require no-fault insurers to obtain a copy of an individual's Medicaid card when the individual first applies for coverage and at every subsequent renewal.

MCL 500.3107c, however, does not impose an obligation or onus on no-fault insurers, either directly or through their agents, to secure proof of an individual's Medicaid coverage at the time of the no-fault policy's issuance or at the time of renewal. Instead, the statute mandates that "for an insurance policy . . . issued or renewed after July 1, 2020, the applicant or named insured, shall, in a way required under [MCL 500.3107e] and on a form approved by the director," select one of the available coverages, which in this case was the limit of $50,000. MCL 500.3107c(1)(a). The statutory language further provides an important qualification that the selection of the $50,000 coverage limit "is only available to an applicant or named insured" under certain delineated circumstances. MCL 500.3107c(1)(a). One of the qualifications outlined in the statute is that "[t]he applicant or named insured *is* enrolled in Medicaid . . . ." MCL 500.3107c(1)(a)(*i*) (emphasis added). MCL 500.3157(15)(e) defines the term "Medicaid" as "a program for medical assistance established under subchapter XIX of the social security act, 42 USC 1396 to 1396w-5." MCL 500.3157 does not otherwise speak to the issue of Medicaid enrollment and does not contain any requirement that an insurer secure proof of Medicaid enrollment either when an individual applies for a policy or at the time of subsequent renewals.

Moreover, the Legislature intentionally used the present-tense word "is," in MCL 500.3107c(1)(a)(*i*) when requiring that the "applicant or named insured *is* enrolled in Medicaid . . . ." (Emphasis added.) The Legislature's use of the present-tense word "is" indicates "prospective-only application." *McLain v Roman Catholic Diocese of Lansing*, 514 Mich 1, 24; 22 NW2d 284 (2024). MCL 500.3107c(1) also specifies that an applicant or named insured is required to select "1 of the following coverages" for PIP benefits "for an insurance policy . . . issued or renewed after July 1, 2020 . . . ." Therefore, a plain reading of the statute supports the logical conclusion that an individual who selects the limited $50,000 PIP coverage is required to be enrolled in Medicaid at the time of the policy's issuance or renewal.

In sum, contrary to plaintiffs' claim, there is nothing in the language of the statute mandating that insurers secure *proof* of Medicaid enrollment either at the time of an individual's application or at a subsequent renewal. Again, we are not permitted to supplement the text of a statute by adding requirements that the Legislature did not itself determine necessary. *Scugoza*, 316 Mich App at 228. Therefore, we decline plaintiffs' invitation to read into MCL 500.3107c a requirement that insurers secure proof or documentation of an individual's Medicaid enrollment either at the time the individual applies for the policy or during the subsequent renewal process. As such, the trial court did not err by granting summary disposition under MCR 2.116(C)(10), as material factual disputes did not remain on this issue.[1]

Plaintiffs' next challenge to the effectiveness of Howard's selection of limited PIP medical coverage relates to Howard's signature on the choice-of-coverage form. Plaintiffs specifically contend that the court erred in granting summary disposition because factual disputes existed regarding whether Howard's signature on the choice-of-coverage form was valid under MCL 500.3107c and MCL 500.3107e. We disagree.

In *Bronson Health Care Group*, 348 Mich App at 443-444, this Court recognized that MCL 500.3107c requires that an insured select a coverage option " ' in a way required under' " MCL 500.3107e. MCL 500.3107e provides, in pertinent part:

> (2) A person must make a selection under [MCL 500.3009] or [MCL 500.3107c], or an election under [MCL 500.3107d] in 1 of the following ways:
>
> (a) Marking and signing a paper form.
>
> (b) Giving verbal instructions, in person or telephonically, that the form be marked and signed on behalf of the person. To be an effective selection or election, the verbal instructions must be recorded and the recording maintained by the person to whom the instructions were given. If there is a dispute over the effectiveness of a selection or election under this subdivision, there is a presumption that the selection or election was not effective and the insurer has the burden of rebutting the presumption with the recording.
>
> (c) Electronically marking the form and providing an electronic signature as provided in the uniform electronic transactions act, 2000 PA 305, MCL 450.831 to 450.849. [Emphasis added.]

The choice-of-coverage form contained Howard's signature in typed form. The parties here do not contend that Howard gave verbal instructions that the choice-of-coverage form be marked and signed on her behalf to the extent that MCL 500.3107(2)(b) would be applicable. Instead, at issue is whether Howard made her selection under MCL 500.3107c by electronically marking the form and providing an electronic signature as provided in the UETA. The relevant

---

[1] Given our determination that proof of Medicaid enrollment is not required either at the time of her application or at a subsequent renewal, any factual dispute regarding the date of the photograph of Howard's Medicaid card is not dispositive.

provision of the UETA, MCL 450.832, defines an electronic signature as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." Under the UETA, an electronic signature is attributable to an individual "if it is the act of the person." MCL 450.839(1). MCL 450.839 further provides, in pertinent part:

> (1) . . . The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.

> (2) The effect of an electronic record or electronic signature attributed to a person under subsection (1) is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including any agreements of the parties, and otherwise as provided by law.

While plaintiffs rely heavily on *Bronson Health Care Group*, 348 Mich App 435, 436, as support for their position, *Bronson* is both procedurally and factually distinguishable. In *Bronson*, the plaintiff had argued that the defendant had failed to put forth evidence establishing that the insured had electronically signed the choice-of-coverage form in a manner permitted under MCL 500.3107e. *Id*. The defendant countered that the insured had signed the form electronically as allowed by MCL 500.3107e(2)(c). *Id*. at 436. The defendant had produced "IT metadata showing IP addresses," claiming that this evidence established that the insured had given a valid electronic signature. *Id*. at 446. Observing that neither party had hired an expert to explain the metadata and its impact on the validity of the insured's signature, the *Bronson* Court vacated the trial court's order granting the defendant-insurer's summary disposition and remanded for additional discovery on the matter. *Id*. Stated differently, the *Bronson* Court concluded, under the specific facts of that case, that the defendant's production of the typed name on a choice-of-coverage form, without any indication from the document itself that it was the insured who had executed or adopted the document, did not establish that the signature was made by an act of the insured. See *id*. at 445-446. *Bronson Health Care Group* does not, therefore, stand for the broad principle of law that a typed name, in and of itself, will not suffice to establish that the insured signed the choice-of-coverage form electronically as required by MCL 500.3107e.

In the present case, defendant included the full copy of the choice-of-coverage document, reflecting Howard's typewritten initials, in which she verified that she understood her election and its impact on her PIP coverage. The change-of-coverage document also showed a typewritten "X" where Howard had made her election of PIP coverage. A review of the choice-of-coverage document itself does not provide further information regarding whether Howard's alleged electronic signature was the product of Howard's actions and is not helpful in determining the context and surrounding circumstances at the time of the choice-of-coverage form's "creation, execution, or adoption, . . . ." MCL 450.839(2). Yet, unlike the plaintiff in *Bronson Health Care Group*, 348 Mich App at 435-436, plaintiffs here did not assert that defendant had not produced evidence to establish that the signature of the insured was valid under MCL 500.3107e. Accordingly, given that plaintiffs did not provide the trial court with evidence, such as an affidavit, the trial court did not err by granting summary disposition in favor of defendant. MCR 2.116(G)(4) ("When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by

-6-

affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial.").

Finally, plaintiffs argue that defendant's payment log only reflected that defendant paid $47,941.50 for allowable expenses under MCL 500.3107(1)(a). Plaintiffs also contend that there are factual questions as to whether three of the payments were for allowable expenses.[2] We disagree.

MCL 500.3107c(1)(a) provides that a named insured or applicant for a policy of no-fault insurance may select limited PIP medical coverage of "$50,000.00 per individual per loss occurrence for any personal protection insurance benefits under [MCL 500.3107(1)(a)]." MCL 500.3107 provides, in pertinent part:

(1) Subject to the exceptions and limitations in this chapter, and subject to chapter 31A, personal protection insurance benefits are payable for the following:

(a) *Allowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation.* [Emphasis added.]

Plaintiffs argue that a review of defendant's payment log reflects that it only paid $47,941.50, rather than the full $50,000 in PIP medical claims. Plaintiffs also point to three specific payments defendant made, asserting that because they do not include a medical payee, factual disputes exist regarding whether the expenses were allowable under MCL 500.3107(1)(a) for "reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."

A review of the three challenged payments in the payment log does not support plaintiffs' contention that the payments were not for allowable expenses under MCL 500.3107(1)(a). For example, while the September 12, 2022, October 10, 2022, and October 21, 2022, payments all list Howard as the payee, there is no indication from the record that the payments defendant made to Howard did not pertain to allowable expenses under MCL 500.3107(1)(a). Instead, the challenged payments are all described as "PIP-Medical Coverage-Medical Payments," the same description applied to payments made to various medical providers that plaintiffs apparently accept as reflecting allowable expenses. This is in contrast to payments that were not for allowable

---

[2] After plaintiffs filed their brief on appeal in this Court, defendant filed a motion to correct or expand the record, in which it noted that the pay log submitted in support of its motion for summary disposition and renewed motion for summary disposition was "outdated," and was therefore included by mistake. This Court denied defendant's motion to correct or expand the record without prejudice, stating that the motion could be refiled for consideration by the case call panel. *Mich Ambulatory Surgical Ctr v Esurance Ins Co*, unpublished order of the Court of Appeals, entered September 26, 2024 (Docket No. 369465). Defendant filed a renewed motion to correct or expand the record, which we denied. *Mich Ambulatory Surgical Ctr v Esurance Ins Co*, unpublished order of the Court of Appeals, entered January 15, 2026 (Docket No. 369465).

expenses under MCL 500.3107(1)(a), such as a series of payments to Howard that are described as "PIP Work Loss-Wage Loss" and "PIP-Medical Coverage-PIR-Replacement Services." See MCL 500.3107(1)(b) and (c) (identifying benefits for wage loss and replacement services separately from allowable expenses for reasonably necessary products, services, and accommodations). Plaintiffs also did not support their challenge to whether the expenses were allowable under MCL 500.3107(1)(a) with evidentiary support. MCR 2.116(G)(4). Accordingly, the trial court did not err in granting summary disposition in defendant's favor with respect to this issue, given that genuine issues of material fact did not remain for trial on the issue whether the three discrete payments that plaintiffs challenged were not for allowable expenses under MCL 500.3107(1)(a).

Next, the trial court did not expressly address the amount of defendant's payments, but the court held generally that plaintiffs had not provided evidentiary support for their claims that genuine issues of material fact precluded summary disposition. The trial court's determination was correct because, while plaintiffs challenged defendant's assertion that it had paid out $50,000 in PIP medical claims, aside from their bare allegations that the calculations were incorrect and their own chart calculating the charges included in their brief on appeal, plaintiffs did not submit documentary and evidentiary support for their assertion that factual issues existed to withstand summary disposition. MCR 2.116(G)(4). For example, along with their chart, plaintiffs could have submitted an affidavit or deposition testimony of one of defendant's employees stating that the policy limits were not paid in full, but they did not do so. Therefore, the trial court did not err by concluding that, rather than resting on their "mere allegations," plaintiffs had not, with evidentiary support, "set forth specific facts showing that there is a genuine issue for trial" with respect to whether defendant had paid policy limits on Howard's claim. MCR 2.116(G)(4).

Affirmed. Defendant may tax costs as the prevailing party. MCR 7.219(A).

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Adrienne N. Young